# EXHIBIT A

1                       IN THE UNITED STATES DISTRICT COURT

2                       IN AND FOR THE DISTRICT OF DELAWARE

3                               - - -

ALIGN TECHNOLOGY, INC.,

4                                          :    CIVIL ACTION NO.
           Plaintiff,                      :

5    v                                     :
                                           :

6    3SHAPE A/S and 3SHAPE, INC.,          :
                                           :    17-1646-LPS-CJB

7          Defendants.                     :
     ------------------------------------

8    ALIGN TECHNOLOGY, INC.,
                                           :    CIVIL ACTION NO.

9          Plaintiff,                      :

     v                                     :

10                                         :

     3SHAPE A/S and 3SHAPE, INC.,          :

11                                         :    17-1647-LPS-CJB
           Defendants.                     :

12                              - - -

13                         Wilmington, Delaware
                         Thursday, April 30, 2020

14                        *Telephone Conference*

15                              - - -

16   BEFORE:   HONORABLE LEONARD P. STARK, Chief Judge

17   APPEARANCES:              - - -

18
                 SHAW KELLER, LLP

19               BY:  JOHN W. SHAW, ESQ

20                    and

21               PAUL HASTINGS, LLP
                 BY:  BLAIR M. JACOBS, ESQ., and

22                    CHRISTINA A. ONDRICK, ESQ.
                      (Washington, District of Columbia)

23                    and

24

25                              Brian P. Gaffigan
                                Official Court Reporter

```
 1    APPEARANCES: (Continued)

 2
                    PAUL HASTINGS, LLP
 3                  BY:  GRANT MARGESON, ESQ.
                         (San Francisco, California)
 4
                         and
 5
                    MORRISON & FOERSTER, LLP
 6                  BY:  RICHARD S.J. HUNG, ESQ.
                         (San Francisco, California)
 7
                         and
 8
                    BARTLIT BECK, LLP
 9                  BY:  MARK L. LEVINE, ESQ.
                    (Chicago, Illinois)
10
                         and
11
                    BARTLIT BECK, LLP
12                  BY:  JOHN M. HUGHES, ESQ.
                    (Denver, Colorado)
13
                              Counsel for Align Technology, Inc.
14

15                  PEPPER HAMILTON, LLP
                    BY:  JAMES H.S. LEVINE, ESQ.
16
                         and
17
                    PEPPER HAMILTON, LLP
18                  BY:  GOUTAM PATNAIK, ESQ.,
                         DAVID J. SHAW, ESQ., and
19                       KIMBERLY E. COGHILL, ESQ.
                         (Washington, District of Columbia)
20
                         and
21
                    PEPPER HAMILTON, LLP
22                  BY:  BRITTANEE L. PETRIK, ESQ.
                         (Boston, Massachusetts)
23
                              Counsel for 3Shape A/S and 3Shape, Inc.
24

25
```

```
 1                          - oOo -

 2                    P R O C E E D I N G S

 3               (REPORTER'S NOTE:  The following telephone

 4     conference was held remotely, beginning at 3:16 p.m.)

 5               THE COURT:  Good afternoon, everybody.  This is

 6     Judge Stark.  Who is there for Align, please?

 7               MR. J. SHAW:  Good afternoon, Your Honor.  It's

 8     John Shaw for Align.  A few people to introduce between the

 9     two cases.

10               For the 1646, from Paul Hastings, Blair Jacobs,

11     Christina Ondrick, and Grant Margeson have joined us.

12               For the 1647 action from Morrison & Foerster,

13     Richard Hung.

14               For both actions from Bartlett Beck, Mark Levine

15     and John Hughes.

16               And from Align, I believe we have Jeff Comeau

17     and Arthur Hseih.

18               THE COURT:  Okay.  Thank you very much.

19               And who is there for 3Shape, please?

20               MR. J. LEVINE:  Good afternoon, Your Honor.

21     It's James Levine from Pepper Hamilton.  I'm joined by

22     co-counsel, Goutam Patnaik, David Shaw, Kimberly Coghill,

23     and Britanee Petrik; and that is in both cases.

24               THE COURT:  Okay.  Thanks very much; and I have

25     my court reporter on the line as well.
```

1          For the record, it is our two related cases and

2     this is Align Technologies Inc. vs. 3Shape A/S, et al, Civil

3     Action Nos. 17-1646 and 17-1647.  This is the time I set aside

4     to talk to you about the disputes arising from our recent

5     order which adopted Judge Burke's Report and Recommendation.

6          I have reviewed all the letters that have come

7     in including the two most recent ones.  We heard yesterday

8     from Align so why don't we start by letting 3Shape briefing

9     outline your position on the issues.

10          MR. PATNAIK:  Sure, Your Honor.  This is Goutam

11     Patnaik from Pepper.

12          After receiving your initial order on this issue

13     overcoming the objections to Judge Burke's decision, we

14     received a letter from Align, an e-mail on April 15th that is

15     included as Exhibit 2 in the initial joint submission.  That

16     e-mail listed requests which reach all documents relating to

17     any study of Align's patents, patent studies regarding any of

18     the accused products and all studies about any patents by

19     3Shape subsequent to the order.

20          Align also asked in that e-mail for 10 deponents

21     in very short order.  For five of those deponents, we found

22     no record on Pacer of notices being served in 1646 or 1647;

23     and for others, they were individuals that were previously

24     identified only relevant to TRIOS scanners which are

25     products no longer at issue in this case.

1           Align has narrowed the products at issue in this

2  case to, for 1646, model builder and patient monitoring, and

3  for 1647, it's smile design and indirect modeling products.

4           Given the April 15th e-mail, we went back and

5  looked at the orders and thought they were overreaching

6  especially in light of the fact that the orders addressed

7  the 61 documents that were at issue in the protective

8  order that all started with the attempt to carve out those

9  documents from the cross-use agreement of the parties.

10          So the difference in scope was what created

11 this dispute regarding what had actually -- it led to what

12 had actually been previously agreed upon by the parties as

13 to the scope of any additional discovery after Judge Burke's

14 order.  And the issue 3Shape has had, Your Honor, is that

15 Align has been inconsistent with what exactly the additional

16 discovery it seeks now is or should be.

17          So even if you look at the e-mail, Exhibit 7 to

18 the joint submission; this is Document 426-7; this is a

19 February 18, 2020 e-mail from Align's counsel which the

20 first one to the joint submission they characterize as a

21 memorialization, their memorialization of a meet and confer

22 on this very issue regarding the scope of documents they

23 sought to be produced.  In that e-mail, and I quote, they

24 say, "First an update of document production and e-mail

25 production concerning patent agent communications uniquely

1    relevant to the products at issue in the 1646 and 1647 cases."

2         So they had narrowed the scope at least pursuant

3    to their understanding of where the parties were to the

4    products at issue in these two cases; but the earlier e-mail

5    was much broader, and then yesterday's submission by Align

6    was also much broader.  They went further and they wanted

7    all communication also relating to any 3Shape agents, patent

8    analyses, and they are untethered to the products at issue,

9    the asserted patents or the parties' e-mail for the protocol

10   or any other limitation.

11        So that is the crux of the dispute right now,

12   Your Honor.  We're seeking your guidance to ensure the

13   scope of any supplemental production or depositions is

14   appropriately limited to the scope of the case at hand,

15   unlike what Align is apparently currently looking for or

16   seeking, which to us appears very much like a fishing

17   expedition or a desired preview for their other pending

18   litigations.

19        THE COURT:  Okay.  On this notice of deposition

20   point, is that something you pointed out to me before in

21   these many letters?

22        MR. PATNAIK:  No, Your Honor.  I just realized

23   it today looking through Pacer, and we did it when we were

24   trying to figure out the universe of relevant deponents.

25        THE COURT:  To the extent that they're saying

1     that I should understand your position now to be basically

2     an overbreadth objection, they say that that was waived long

3     ago.  What is your response to that?

4                    MR. PATNAIK:  Well, we went back today, Your

5     Honor, and looked at the actual document request they

6     flagged in their letter yesterday.  We did have relevance

7     objections to each of the requests that we thought touched

8     upon this issue, so I'm not sure how it was waived.  Our

9     protective order was based on the privilege dispute, but

10    we never said that we were going to give them everything

11    untethered to the scope of this case.

12                    THE COURT:  Did you find that you had preserved

13    an overbreadth objection or just a relevance one?

14                    MR. PATNAIK:  Relevance, Your Honor.  The

15    wording was that it was either -- it was relevance in the

16    document request responses.

17                    THE COURT:  All right.  Talk, if you would,

18    about the fees.  They're asking me to award probably what

19    amount to a great deal of fees.  Tell me why in your opinion

20    I shouldn't do that.

21                    MR. PATNAIK:  Your Honor, your order I thought

22    addressed costs, and I think they added fees yesterday.  We

23    had a good faith dispute, and we -- they had argued in many

24    cases that there was a fraud waiver for any time we said

25    anything about what we thought was privileged, so that was

```
 1   one issue.

 2            There was -- I need to be blunt.  We thought

 3   questioning our witnesses about these documents and these

 4   issues, it was going to -- you can't unring that bell.  That

 5   is going to seep into the litigation, whether they use them

 6   on subsequent questions or not, depending on how the orders

 7   came out; so it didn't make sense to us.  And this is the

 8   same practice we did in the ITC when this issue came up,

 9   and the idea that we should be sanctioned for it now when

10   we're just preserving our rights or seeking to preserve our

11   rights, we don't think it is warranted.

12            THE COURT:  All right.  If I agree with them on

13   what you need to produce, is May 4th still the date that you

14   would say is realistic or would you need more time?

15            MR. PATNAIK:  I think we could hustle and do --

16   if it's broader than we're expecting, we could still do it

17   by May 4th.

18            THE COURT:  Okay.

19            MR. PATNAIK:  And I can tell, we can inform

20   both the Court and Align if we feel like we need more time.

21   We can do it, we can do it a first tranche right away on

22   May 4th that we're planning and we can quickly supplement;

23   but at this point, Your Honor, I don't think we need to

24   supplement after May 4th.

25            THE COURT:  All right.  Well, thank you for that.
```

1    We'll come back to you, but we'll hear now from Align.

2              MR. J. SHAW:  Your Honor, it's John Shaw.  I'll

3    talk to the broad issues on what was at issue in the

4    protective order motion and the relevance and overbreadth.

5              If Your Honor has specific questions about

6    deponents, for example, Mr. Jacobs will handle those.

7              On the big picture question, what was at issue.

8    If you go back to the protective order motion, it is clear

9    there are two things in the very first paragraph outlined by

10   3Shape:

11             First, they wanted us to return or destroy the

12   61 documents that we already had in our possession.  Those

13   are the ones that say logged and put that log as Exhibit 1

14   to their motion.

15             The second item they wanted was a protective

16   order that broadly, and I'm quoting "recognizing privilege

17   and legal analysis -- legal advice/legal analysis prepared

18   by the European patent attorneys (EPAs), and foreign patent

19   practitioners."

20             They then describe the documents at issue and

21   they did it not tethered to the products or patents in the

22   case.  Here is what they said, "legal analysis and advice

23   relating to European patents, global patent portfolios

24   and/or competitor patents and the context of the client's

25   products."

1          We gave a similar description in our responsive

2    brief, "studying competitive company patents and developing

3    a scanner product for the U.S. market."

4          It's correct that they did put relevance in

5    their objections on their document requests but they never

6    raised relevance to the Court at the time they're actually

7    trying to stop the documents from production.  It's not

8    mentioned in their opening brief, and it's not mentioned

9    in the two briefs; that they submitted full-length briefs

10   as submitted to Judge Burke; not discussed, the words

11   "relevance" and "overbreadth" to the request, and what's at

12   issue were never mentioned.

13         The second place that confirms all this happens

14   in October when we moved to compel privilege log, because

15   the only privilege log we had in the two cases were the 61

16   documents we already had but we couldn't use because of

17   their privilege assertion.

18         They objected to the privilege log because they

19   thought it would be burdensome and their work would be

20   "significantly impacted" by Judge Burke's ruling.

21         At the hearing on this motion, Judge Hall, who

22   at that point had discovery issues before her, asked 3Shape

23   to quantify the logging burden.

24         The response was, as we described in our papers,

25   hundreds and hundreds of documents.  For that reason, she

1      accepted the burdensome objection and let them off the hook

2      from logging the documents.

3              Again, though, 3Shape didn't say that logging

4      may ultimately be unnecessary because some of the documents

5      weren't relevant and that we're requesting overbroad things,

6      and there was no mention of narrowing of the types of

7      documents that were at issue in the original protective

8      order motion.

9              The third place this happens is in the motion to

10     stay in February and the reply brief in particular.  Again,

11     they distinguish between the 61 documents and the broader

12     category; but again, remember, we had the 61 documents;

13     and here in the reply brief, they talk about turning over

14     potentially privileged, we say it again, "turn over highly

15     sensitive privileged communications to a major competitor."

16     They couldn't be referring to the 61 that we had but the

17     other documents that we were requesting that were at issue.

18             They then in that paper turn to discussing why

19     3Shape shouldn't produce all the materials that were at

20     issue in the protective order motion and that they

21     originally described there.  Again, they don't talk about

22     some of those documents being not relevant or that there is

23     only a narrower subset but instead their rationale to stay

24     the order and stay their compliance with the "nonsensical"

25     to again to, and I'll quote again, "require 3Shape to

1    engaged in the engaged and burdensome discovery."

2              From the outset of the dispute when they brought

3    it to where we are now, until just now, 3Shape framed these

4    issues as more than just the 61 documents and more than

5    documents about the patens of the products specifically in

6    these two litigations.

7              So I'll pause before turning to the dates and

8    the deposition fee questions.

9              THE COURT:  Okay.  Thank you, but I don't have

10   any questions at this point.  You can proceed.

11             MR. J. SHAW:  Okay.  So May 4 is a day that we

12   definitely need some of these documents we expect will be

13   relevant to issues in the summary judgment briefing that

14   will be argued a week from tomorrow before Your Honor, so

15   getting them Monday provides a tight but doable window for

16   us to get through them.

17             If we find things as we expect that are relevant

18   to two of the issues in that motion, we'll be asking 3Shape

19   for their consent and then Your Honor for your approval to

20   file something short to put those in front of Your Honor

21   because we do believe they'll impact the motions.

22             On the fees question, additional relevance in

23   depositions happens all the time.  The rules are set up in a

24   way that get the witness under oath, you ask all the issues

25   that may be there and sometimes issues aren't relevant and

1    they're -- at the time, as you go through the pretrial and

2    get to trial, those things are excised and not used.

3           In this case, with the privilege, we tried to

4    do the same thing and we provided additional safeguards as

5    are permitted by the federal rules of evidence and civil

6    procedure so that any materials that would in the end have

7    turned out to be privileged, that they would have been used

8    and would have been set aside, but that was refused and now

9    we're faced with the additional cost and fees and impacts of

10   getting that work done in a shorter time.

11          I should also add there that there are fees and

12   costs that aren't as easily quantifiable that results from

13   where we are today, for example, putting together on an

14   expedited basis, review of documents, getting ready for Your

15   Honor for the hearing.  That is not so easily quantifiable,

16   but certainly we think impacts the need and the reasons for

17   a sanction such as paying our fees and costs and getting the

18   deposition work done before the trial.

19          And that's all I have, Your Honor.

20          THE COURT:  All right.  On the depositions, I

21   don't think I need it item by item about the ten, I think it

22   is, that you want, but just generally the argument that the

23   notices of deposition may not have been served and in some

24   ways the case is narrower now than it was back when this

25   whole dispute arose, so maybe you should be able to limit

1    things a little bit.

2              MR. JACOBS:  Your Honor, Blair Jacobs.

3              In October of 2018, we served requests for

4    production of documents and we served deposition notices

5    with very, very similar scope; and the request that we put

6    forth was "all nonprivileged 3Shape communications

7    concerning the analysis or examination of Cadence or Align

8    patents."  We provided that to you in the exhibit we

9    provided yesterday.  And then all "3Shape communications

10   involving European patent agents, including, but not limited

11   to, two that we were aware of contain the analysis of

12   Cadence or Align products or patents or other competitors

13   products or patents.

14             Now, that defines the scope of what we were

15   looking for; and we weren't looking to narrow it to only the

16   products and patent in this case, Your Honor, we made this

17   clear during meet and confers with 3Shape, because if they

18   took an action with regard to another product not involved

19   in this case and they didn't take that similar action or

20   they took a different action with regard to a product or a

21   patent involved in this case, that is highly relevant to

22   willfulness, inducement, and/or a number of excludable

23   defenses that they have raised.  They have raised these

24   laches and these equitable estoppel defenses that go to

25   their state of mind.

1          But, Your Honor, even in the summary judgment

2    briefing; and we have our hearing next week; one of their

3    oppositions regarding three patents in the 1646 case was

4    that we did not have sufficient evidence of their state of

5    mind to demonstrate inducement.  That is why all of this

6    evidence that we're looking for regarding any patent agent

7    communications or freedom to operate studies would be relevant.

8          As to the notices of deposition, we noticed the

9    five that we knew had knowledge because we had been shut down

10   in depositions.  We had asked on a number of occasions to take

11   those depositions provisionally and we had been shut down.

12         The other five, Your Honor, came up in the

13   documents, the 61 documents that were provided to Judge Burke

14   as part of the argument relating to the protective order.

15         And so those individuals became relevant when

16   3Shape put them in front of Judge Burke as part of that

17   protective order dispute.  But, Your Honor, in part, there

18   is other individuals likely that we'll need to know this

19   because we don't have the documents or the communications at

20   all that we have requested; and once we get those documents

21   and communications, there may be a few other people who are

22   relevant, who were involved in these studies, and so that is

23   why we're looking for the additional depositions.

24         And, Your Honor, we started writing -- I have

25   communication that is in the record as of May of 2019

1    indicating not only that we were willing to provisionally

2    take these depositions, but we also cited the Federal Rules

3    of Civil Procedure and the Federal Rules of Evidence.   In

4    particular, we cited Rule 502(d).   And 502(d) was passed so

5    that you could provisionally provide this type of evidence.

6              If they would have sought that type of

7    protection, Align would have never opposed that type of

8    protection.   So the fee issue here doesn't really have to do

9    with whether this protective order that they were seeking

10   was appropriate or not; and that is how they framed it

11   completely.   It really goes more towards have they wasted

12   the Court's time and a party's time by forcing this second

13   round of deposition.   And when you look at the long line of

14   communication and the whole history here of us trying to get

15   the depositions taken provisionally, it's clear that their

16   conduct and their actions have necessitated unnecessarily

17   the second round of depositions.

18              THE COURT:   Okay.   Thank you very much.

19              Is there anything else Align wanted to say?

20              MR. JACOBS:   No.   If Your Honor has any additional

21   questions relating to any of the meet and confers or anything

22   of that nature, we're happy to provide background, but I think

23   we discussed our points very, very well.

24              THE COURT:   Okay.   Thank you.

25              Then back to 3Shape to add whatever you like.

1          MR. PATNAIK:  I guess Your Honor, let me bring

2   up the depositions.

3          The appropriate scope.  We maintain that the

4   appropriate scope of the depositions is tethered to the case

5   and the scope of the case.  Counsel is referring to comments

6   that he already has from depositions of 3Shape witnesses

7   that they have a general practice with the products.

8          The fact they have that practice as he already

9   has via deposition testimony, the idea that he needs to see

10  all of the freedom to operates across all products and all

11  patents seems a bit overkill, Your Honor, in light of the

12  proffered reason why he wants it, if he wants to show if

13  that practice wasn't followed or not for these products at

14  issue.

15         If he gets the freedom to operate and the other

16  analyses for the products at issue and the patents at issue,

17  I think he has whatever pieces he needs for his defenses to

18  our equitable defenses, so I don't know that he needs the

19  broad brush of discovery that he says he needs for that

20  issue, also the motions practice next week.

21         As far as relevance, Your Honor, I mean that

22  objection was maintained in our document request responses

23  and the confusion also lies inside -- I mean even the

24  communication on this issue that counsel is referring to has

25  been inconsistent.  I referred earlier to that Exhibit 7 in

1     the Document 426.  They were clear that they were focused

2     on the products at issue in this case, which makes sense.

3     So the idea that we would further object to relevance in any

4     event, it just seems like it got broader with time, Your

5     Honor.

6                    THE COURT:  Okay.  Excuse me.  Thank you.  Thank

7     you for the discussion.

8                    The time has come -- you may say it's well past

9     time for these disputes to be behind all of us.  Lots of

10    time has been spent by the parties and by the Court on the

11    disputes today and the ones that have given rise to what

12    we're talking about today.

13                   Obviously, Judge Burke did a lot of work; Judge

14    Hall done some; I've done a fair amount of work.  There has

15    been briefs; there has been objections; there has been

16    letters; there has been numerous discussions; and these

17    cases are moving along.  As you've referenced, we have a

18    motions hearing next week.  We have trials coming up.  So I

19    recognize I need to just make some decisions so you all know

20    what your obligations are, and the cases can move forward on

21    the schedule that they are currently on.

22                   So that means, while I have delved into the

23    weeds in getting ready for today, my decision is being made

24    at even more so at the big picture level.  And big picture,

25    I see there as being three disputes:  the first one about

1    basically the documents and depositions, second one about

2    the timing of producing those, and the third one about the

3    fees.

4            And for reasons I'm going to explain but only

5    briefly, given the long record that we all have on these

6    issues already, I am siding with Align on issues 1 and 2 and

7    I am siding with 3Shape on issue 3.

8            So what that means is Align is going to get the

9    discovery that they are seeking but I'm not going to shift

10   fees and costs.

11           So just a few thoughts about how I have reached

12   that conclusion.

13           I do think that what was at issue in the

14   protective order dispute that was in front of Judge Burke

15   for some time was at least by implication much more than

16   just the 61 documents.  And that reality I think is well

17   reflected in a careful review of the briefs, the letters,

18   the meets and confers that are memorialized through

19   declarations and other things in the record.  It was never

20   just about 61 documents.  And the decision there ultimately

21   as far as I mean has implications, implications that are

22   consistent with what Align has argued and, therefore, has

23   informed my decision that the additional discovery sought by

24   Align needs to be provided by 3Shape.

25           I am not entirely or even principally focused on

1    the past in reaching this decision, although to the extent

2    I must, I do think that Align's characterization of the

3    positions the parties took and how we got to where we are

4    today is much closer to what appears to be the reality than

5    the somewhat different story that 3Shape has tried to

6    portray for me.

7             But at least as importantly and probably more

8    importantly, I'm really focused on where we are now and

9    where these cases should go going forward.  And in that

10   regard, Align's request for additional discovery all seems

11   reasonable to me.  It's proportional to the needs of these

12   cases.  Mind you, it's two very large patent cases.  And

13   it all seems relevant to me for at least the reasons

14   articulated in Align's most recent letter, and we heard a

15   little bit of it today.

16            So even assuming that the relevance objection

17   was properly preserved throughout all the litigation that

18   got us to today, I would overrule -- am overruling that

19   relevance objection as not being meritorious in light of

20   everything else about these cases.  I don't think there is

21   an overbreadth objection that was preserved.  In any case,

22   3Shape has not made a showing, at least to my satisfaction,

23   that what I am ordering in terms of discovery is overbroad.

24            So to try to be just a little bit concrete on

25   these issues 1 and 2, I'm awarding the relief; and to some

1    extent, you could view it as clarification, but I'm awarding

2    the relief that Align asked for in its letter of yesterday.

3             So on page 1, I'm ordering 3Shape to produce all

4    nonprivileged documents, e-mails and communications relating

5    to its agents, patent analyses as Align has long requested;

6    and, two, log any such documents it claims remain privileged

7    despite the Court's Order.

8             And then on page 3, I'm further ordering that

9    this be done by May 4th, which both parties tell me is an

10   acceptable date; and by May 4th, 3Shape produce (A), the

11   documents it withheld; (B), all other responsive

12   nonprivileged documents and e-mails regarding patent agent

13   communications not previously produced; (C), a complete and

14   accurate privilege log; and (D), a certification that all

15   responsive documents have been produced or logged.

16            I further order that the parties meet and confer

17   very expeditiously, and that 3Shape timely schedule the

18   relevant depositions that have been requested by Align.

19            On issue 3, the fees and the costs, that's the

20   toughest issue that you put before me today.  I do think that

21   the record will show that there has been some unnecessary

22   costs incurred by Align as a result of how 3Shape handled this

23   mess of discovery disputes over the last year or so.  And

24   that's unfortunate, but I'm not persuaded on the whole that

25   it is such that it warrants me shifting any fees and making

1    3Shape pay financially.

2              I understand that 3Shape appears to have believed

3    it was acting not only in good faith but consistent with what

4    it thought was necessary to preserve its rights and consistent

5    with what it argues at least in the course of dealing between

6    the parties in at least the ITC litigation; and I do realize

7    that the parties have been engaged and are engaged in a great

8    deal of litigation with one another; so I am not going to

9    shift the fees or the costs.

10             So that's my ruling.  What else?  Any questions

11   about that or do you need anything else further from me?

12   First from 3Shape.

13             MR. PATNAIK:  Sure.  This is Goutam Patnaik,

14   Your Honor.  A couple questions.

15             You raised the e-mails and the language in their

16   letter about e-mails.

17             I want to confirm the parties have been acting

18   in all these cases with under e-mail protocols that specify

19   custodians and hit search terms.  I just want to make sure

20   that those are the e-mails we're talking about, and it is

21   not broader than what the parties have already been doing.

22             THE COURT:  All right.  Let me hear from Align

23   on that.

24             MR. JACOBS:  Your Honor, when they ran -- this

25   is Mr. Jacobs.  When they ran their e-mail searches, they

1    undoubtedly -- we put in terms relating to this issue, so to

2    the extent that they uncovered e-mails relating to these

3    issues as part of their e-mail searches, those should be

4    produced.   We are not requesting that they run any

5    additional e-mail searches beyond the scope of what they

6    have already run.

7              It is our assumption, because we put terms in

8    our e-mail search term requests specifically focused on

9    these patent agent communications, that they will have

10   already uncovered them as part of their process; and in

11   any event, Your Honor, your certification requirement will

12   require them to go back and double check and make sure that

13   they have uncovered the e-mails that are relevant and

14   responsive here.

15             THE COURT:   Okay.   Thank you.

16             Does that answer the question?

17             MR. PATNAIK:   Yes, Your Honor.   I just wanted

18   to confirm that we're still working under the protocol, the

19   paradigm, and we are; and we are fine with that.

20             One other issue I just wanted to flag for

21   everyone while we're on the phone.   ██████████████████████

22   ████████████████████████████████████████████████████████████

23   ██████████████

24                        ██████████████████████████████████████████

25   ██████████████████████████████████████████████████████████

1 ███████████████████████████████████████████

2 ██████████████████████████████████ so there may be

3 challenges with getting his deposition promptly; and I

4 wanted to make sure that everybody knew that.

5         THE COURT:  Okay.  I, of course, hope than he

6 feels better soon.  I'm confident that Align will be

7 reasonable in what they request.  If somebody is sick, and

8 obviously all of us are limited right now with our ability

9 to travel, you know, nothing about my order is meant to deny

10 those realities.  I'm just confident that the parties can

11 work through them cooperatively.

12         Anything else from 3Shape?

13         MR. PATNAIK:  No, Your Honor.  I don't think so.

14         THE COURT:  Okay.  Any questions or other issues

15 from Align?

16         MR. JACOBS:  Your Honor, this is Blair Jacobs.

17 I do have one or two.

18         First, I wanted to clarify my prior response.  I

19 think that it was stated that 3Shape should search that and

20 confirm in their required confirmation that they have

21 searched non-email repositories for all responsive

22 information.

23         I think that they have agreed to that.  But the

24 question that I have is, as Your Honor knows, our summary

25 judgment hearing and *Daubert* hearing is next Friday.

1          We are in the process of preparing, as you might

2     imagine; and there are two motions, one filed by Align and

3     one filed by 3Shape; where these documents that we will be

4     receiving this production, we will be receiving are directly

5     implicated.

6          And so as a result of that, I would like to

7     respectfully request that we can agree to a time on Monday

8     that we receive the documents.  I would prefer to have them,

9     you know, by 4:00 or 5:00 o'clock Eastern Standard Time

10    because we're going to need to process them, analyze them,

11    and to figure out a way to supplement, assuming that 3Shape

12    will not be opposing our papers now that we have this new

13    information that we did not have when we prepared our papers

14    with regard to the motions in the first place.

15         And so that's the first issue I wanted to present.

16         Tied to that, we wanted to make sure that it was

17    acceptable to Your Honor that if we do need to supplement,

18    based upon this new information that we received, that it

19    would be okay providing brief supplementations prior to the

20    hearing so that 3Shape can see what it is that we're

21    pointing to rather than bringing that up on Friday at the

22    hearing.

23         THE COURT:  Right.  Okay.  What is 3Shape's

24    response?

25         MR. PATNAIK:  I think supplementation, if we

1    could -- I mean I know it's not fair when they haven't seen

2    the documents, but if we can do it by Wednesday so we can

3    put in a brief response by Thursday, that would make sense,

4    but I just don't know how realistic that is.

5              THE COURT:  Right.  Can you get your production

6    to them by 4:00 o'clock Eastern Time on Monday?

7              MR. PATNAIK:  So, Your Honor, the only thing

8    I'm a little concerned about is that we have what we're

9    perceiving as an expanded view of the world as far as what

10   is relevant now.

11             We can definitely do a good chunk of those that

12   is associated with the products at issue and the patents at

13   issue in this case.  It's the other that may take a little

14   bit more time; and I just don't want to overpromise on the

15   other.  We can definitely do the first tranche Monday at

16   4:00 p.m.  It's the rest that concerns me.

17             THE COURT:  All right.  Mr. Jacobs, what do you

18   say to that?

19             MR. JACOBS:  So we want to be reasonable, of

20   course, Your Honor.  Now, it takes some time for us to

21   process these documents after they have been received, so

22   assuming we receive some at 4:00 p.m. on Monday and some at

23   some point in time later than that, we have to process them

24   electronically, make them available for review.  That takes

25   some period of time.

1           And so if we could have until Thursday, say, at

2     11:00 a.m. or noon to file any supplementation, that seems

3     more appropriate because we're looking at a fairly significant

4     volume of documents that we're going to have to process and

5     review; and also it sounds like they're going to be staggered;

6     so I think that we can make that work assuming that we have,

7     by Tuesday, the end of the document production that 3Shape is

8     talking about here.  You know, our assumption is they would

9     have had this gathered already, but I understand that they

10    want to be thorough and they want to make sure they go back

11    and comply with your order.

12           And along those same lines, Your Honor, it is

13    quite possible that when we look at these documents, there

14    may be additional depositions that are required, you know,

15    new names that show up in the document.  We wanted to make

16    sure that the scope of Your Honor's order included new

17    depositions which have not been noticed to this point of

18    course that result from the production of these documents

19    that have been withheld.

20           THE COURT:  All right.  Any further response

21    from 3Shape?

22           MR. PATNAIK:  On the additional depositions,

23    Your Honor, of course, in light of your order, we'll be

24    reasonable.  We just want an opportunity to meet and confer

25    and make sure they're really necessary given the expediency

1     that these depositions have to be done.

2                    THE COURT:  Okay.  So here is how we'll proceed

3     with respect to all of this.

4                    3Shape is to produce all of the responsive

5     material consistent with my order today that it can by no

6     later than 4:00 p.m. Monday East Coast time; and if it turns

7     out that some of it can't be done by then, then you have 24

8     extra hours, until Tuesday at 4:00 p.m., to finish that up;

9     but to be clear, you got to produce what you can by Monday

10    at 4:00 p.m.  There is no holding stuff back until Tuesday.

11                   I can't imagine that you all will not take

12    advantage of the opportunity to file something, and so I'm

13    just going to go ahead and give you leave to do so.

14                   So by Thursday, no later than 10:00 a.m., Align

15    can file up to a five-page supplement with respect to the

16    two motions focused on what, if anything, new you have

17    learned from the production on Monday and possibly Tuesday;

18    and 3Shape can respond by 9:00 a.m. on Friday, similarly,

19    with up to five pages.

20                   All of this, if you do it, will be helpful to

21    me and will also help the parties be better prepared to

22    understand what each of you is likely to argue in response

23    to the new information.

24                   In terms of new depositions, I do recognize

25    and do not mean to preclude that it may be possible that

1    additional depositions are necessary if there is information

2    that is to be produced to Align; so the new depositions

3    would have to be necessitated by the new discovery that I

4    have ordered be produced, and the new depositions are not

5    to be noticed until after the parties meet and confer to

6    hopefully resolve any disputes it may have.

7               I think that resolves everything that you have

8    said.

9               Mr. Jacobs, anything further?

10              MR. JACOBS:  No.  Thank you very much, Your

11   Honor.

12              THE COURT:  Any questions or anything further

13   from 3Shape?

14              MR. PATNAIK:  No, Your Honor.  I think we're

15   set.

16              THE COURT:  All right.  Thank you very much.

17   We'll talk to you next Friday.  Be safe.  Good-bye.

18              (Telephone conference ends at 3:55 p.m.)

19

20       I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

21

22                        /s/ Brian P. Gaffigan
                         Official Court Reporter
23                         U.S. District Court

24

25

## /

**/s** [1] - 29:22

## 1

**1** [4] - 9:13, 19:6, 20:25, 21:3
**10** [1] - 4:20
**10:00** [1] - 28:14
**11:00** [1] - 27:2
**15th** [2] - 4:14, 5:4
**1646** [5] - 3:10, 4:22, 5:2, 6:1, 15:3
**1647** [4] - 3:12, 4:22, 5:3, 6:1
**17-1646** [1] - 4:3
**17-1646-LPS-CJB** [1] - 1:6
**17-1647** [1] - 4:3
**17-1647-LPS-CJB** [1] - 1:11
**18** [1] - 5:19

## 2

**2** [3] - 4:15, 19:6, 20:25
**2018** [1] - 14:3
**2019** [1] - 15:25
**2020** [2] - 1:13, 5:19
**24** [1] - 28:7

## 3

**3** [3] - 19:7, 21:8, 21:19
**30** [1] - 1:13
**3:16** [1] - 3:4
**3:55** [1] - 29:18
**3SHAPE** [4] - 1:6, 1:10
**3Shape** [43] - 2:23, 3:19, 4:2, 4:8, 4:19, 5:14, 6:7, 9:10, 10:22, 11:3, 11:19, 11:25, 12:3, 12:18, 14:6, 14:9, 14:17, 15:16, 16:25, 17:6, 19:7, 19:24, 20:5, 20:22, 21:3, 21:10, 21:17, 21:22, 22:1, 22:2, 22:12, 23:23, 24:12, 24:19, 25:3, 25:11, 25:20, 27:7, 27:21, 28:4, 28:18, 29:13
**3Shape's** [1] - 25:23

## 4

**4** [1] - 12:11
**426** [1] - 18:1
**426-7** [1] - 5:18
**4:00** [7] - 25:9, 26:6, 26:16, 26:22, 28:6, 28:8, 28:10
**4th** [6] - 8:13, 8:17, 8:22, 8:24, 21:9, 21:10

## 5

**502(d** [1] - 16:4
**502(d)** [1] - 16:4
**5:00** [1] - 25:9

## 6

**61** [10] - 5:7, 9:12, 10:15, 11:11, 11:12, 11:16, 12:4, 15:13, 19:16, 19:20

## 7

**7** [2] - 5:17, 17:25

## 9

**9:00** [1] - 28:18

## A

**a.m** [3] - 27:2, 28:14, 28:18
**A/S** [4] - 1:6, 1:10, 2:23, 4:2
**ability** [1] - 24:8
**able** [1] - 13:25
**acceptable** [2] - 21:10, 25:17
**accepted** [1] - 11:1
**accurate** [2] - 21:14, 29:20
**accused** [1] - 4:18
**acting** [2] - 22:3, 22:17
**ACTION** [2] - 1:4, 1:8
**action** [4] - 3:12, 14:18, 14:19, 14:20
**Action** [1] - 4:3
**actions** [2] - 3:14, 16:16
**actual** [1] - 7:5
**add** [2] - 13:11, 16:25

**added** [1] - 7:22
**additional** [13] - 5:13, 5:15, 12:22, 13:4, 13:9, 15:23, 16:20, 19:23, 20:10, 23:5, 27:14, 27:22, 29:1
**addressed** [2] - 5:6, 7:22
**adopted** [1] - 4:5
**advantage** [1] - 28:12
**advice** [1] - 9:22
**advice/legal** [1] - 9:17
**afternoon** [3] - 3:5, 3:7, 3:20
**agent** [4] - 5:25, 15:6, 21:12, 23:9
**agents** [3] - 6:7, 14:10, 21:5
**ago** [1] - 7:3
**agree** [2] - 8:12, 25:7
**agreed** [2] - 5:12, 24:23
**agreement** [1] - 5:9
**ahead** [1] - 28:13
**al** [1] - 4:2
**Align** [32] - 2:13, 3:6, 3:8, 3:16, 4:2, 4:8, 4:14, 4:20, 5:1, 5:15, 6:5, 6:15, 8:20, 9:1, 14:7, 14:12, 16:7, 16:19, 19:6, 19:8, 19:22, 19:24, 21:2, 21:5, 21:18, 21:22, 22:22, 24:6, 24:15, 25:2, 28:14, 29:2
**ALIGN** [2] - 1:3, 1:8
**Align's** [5] - 4:17, 5:19, 20:2, 20:10, 20:14
**amount** [2] - 7:19, 18:14
**analyses** [3] - 6:8, 17:16, 21:5
**analysis** [5] - 9:17, 9:22, 14:7, 14:11
**analyze** [1] - 25:10
**AND** [1] - 1:2
**answer** [1] - 23:16
**APPEARANCES** [2] - 1:17, 2:1
**appropriate** [4] - 16:10, 17:3, 17:4, 27:3
**appropriately** [1] - 6:14
**approval** [1] - 12:19
**April** [3] - 1:13, 4:14, 5:4
**argue** [1] - 28:22
**argued** [3] - 7:23, 12:14, 19:22

**argues** [1] - 22:5
**argument** [2] - 13:22, 15:14
**arising** [1] - 4:4
**arose** [1] - 13:25
**Arthur** [1] - 3:17
**articulated** [1] - 20:14
**aside** [2] - 4:3, 13:8
**asserted** [1] - 6:9
**assertion** [1] - 10:17
**associated** [1] - 26:12
**assuming** [4] - 20:16, 25:11, 26:22, 27:6
**assumption** [2] - 23:7, 27:8
**attempt** [1] - 5:8
**attention** [1] - 23:25
**attorneys** [1] - 9:18
**available** [1] - 26:24
**award** [1] - 7:18
**awarding** [2] - 20:25, 21:1
**aware** [1] - 14:11

## B

**background** [1] - 16:22
**Bartlett** [1] - 3:14
**BARTLIT** [2] - 2:8, 2:11
**based** [2] - 7:9, 25:18
**basis** [1] - 13:14
**became** [1] - 15:15
**Beck** [1] - 3:14
**BECK** [2] - 2:8, 2:11
**BEFORE** [1] - 1:16
**beginning** [1] - 3:4
**behind** [1] - 18:9
**bell** [1] - 8:4
**better** [2] - 24:6, 28:21
**between** [3] - 3:8, 11:11, 22:5
**beyond** [1] - 23:5
**big** [3] - 9:7, 18:24
**bit** [5] - 14:1, 17:11, 20:15, 20:24, 26:14
**Blair** [3] - 3:10, 14:2, 24:16
**BLAIR** [1] - 1:21
**blunt** [1] - 8:2
**Boston** [1] - 2:22
**brian** [1] - 1:25
**Brian** [1] - 29:22
**brief** [6] - 10:2, 10:8, 11:10, 11:13, 25:19, 26:3
**briefing** [3] - 4:8, 12:13, 15:2
**briefly** [1] - 19:5

**briefs** [4] - 10:9, 18:15, 19:17
**bring** [2] - 17:1, 23:25
**bringing** [1] - 25:21
**Britanee** [1] - 3:23
**BRITTANEE** [1] - 2:22
**broad** [2] - 9:3, 17:19
**broader** [6] - 6:5, 6:6, 8:16, 11:11, 18:4, 22:21
**broadly** [1] - 9:16
**brought** [1] - 12:2
**brush** [1] - 17:19
**builder** [1] - 5:2
**burden** [1] - 10:23
**burdensome** [3] - 10:19, 11:1, 12:1
**Burke** [5] - 10:10, 15:13, 15:16, 18:13, 19:14
**Burke's** [4] - 4:5, 4:13, 5:13, 10:20
**BY** [9] - 1:19, 1:21, 2:3, 2:6, 2:9, 2:12, 2:15, 2:18, 2:22
**bye** [1] - 29:17

## C

**Cadence** [2] - 14:7, 14:12
**California** [2] - 2:3, 2:6
**careful** [1] - 19:17
**carve** [1] - 5:8
**case** [16] - 4:25, 5:2, 6:14, 7:11, 9:22, 13:3, 13:24, 14:16, 14:19, 14:21, 15:3, 17:4, 17:5, 18:2, 20:21, 26:13
**cases** [14] - 3:9, 3:23, 4:1, 6:1, 6:4, 7:24, 10:15, 18:17, 18:20, 20:9, 20:12, 20:20, 22:18
**category** [1] - 11:12
**CEO** [1] - 23:22
**certainly** [1] - 13:16
**certification** [2] - 21:14, 23:11
**certify** [1] - 29:20
**challenges** [1] - 24:3
**characterization** [1] - 20:2
**characterize** [1] - 5:20
**check** [1] - 23:12
**Chicago** [1] - 2:9
**Chief** [1] - 1:16
**Christina** [1] - 3:11

**CHRISTINA** [1] - 1:22
**chunk** [1] - 26:11
**cited** [2] - 16:2, 16:4
**CIVIL** [2] - 1:4, 1:8
**civil** [1] - 13:5
**Civil** [2] - 4:2, 16:3
**claims** [1] - 21:6
**clarification** [1] - 21:1
**clarify** [1] - 24:18
**clear** [5] - 9:8, 14:17, 16:15, 18:1, 28:9
**client's** [1] - 9:24
**closer** [1] - 20:4
**co** [2] - 3:22, 23:22
**co-counsel** [1] - 3:22
**co-founder** [1] - 23:22
**Coast** [1] - 28:6
**COGHILL** [1] - 2:19
**Coghill** [1] - 3:22
**Colorado** [1] - 2:12
**Columbia** [2] - 1:22, 2:19
**Comeau** [1] - 3:16
**coming** [1] - 18:18
**comments** [1] - 17:5
**communication** [4] - 6:7, 15:25, 16:14, 17:24
**communications** [10] - 5:25, 11:15, 14:6, 14:9, 15:7, 15:19, 15:21, 21:4, 21:13, 23:9
**company** [1] - 10:2
**compel** [1] - 10:14
**competitive** [1] - 10:2
**competitor** [2] - 9:24, 11:15
**competitors** [1] - 14:12
**complete** [1] - 21:13
**completely** [1] - 16:11
**compliance** [1] - 11:24
**comply** [1] - 27:11
**concerned** [1] - 26:8
**concerning** [2] - 5:25, 14:7
**concerns** [1] - 26:16
**conclusion** [1] - 19:12
**concrete** [1] - 20:24
**conduct** [1] - 16:16
**confer** [4] - 5:21, 21:16, 27:24, 29:5
**Conference** [1] - 1:14
**conference** [2] - 3:4, 29:18
**confers** [3] - 14:17, 16:21, 19:18
**confident** [2] - 24:6, 24:10

**confirm** [3] - 22:17, 23:18, 24:20
**confirmation** [1] - 24:20
**confirms** [1] - 10:13
**confusion** [1] - 17:23
**consent** [1] - 12:19
**consistent** [4] - 19:22, 22:3, 22:4, 28:5
**contain** [1] - 14:11
**context** [1] - 9:24
**Continued** [1] - 2:1
**cooperatively** [1] - 24:11
**correct** [1] - 10:4
**cost** [1] - 13:9
**costs** [7] - 7:22, 13:12, 13:17, 19:10, 21:19, 21:22, 22:9
**counsel** [4] - 3:22, 5:19, 17:5, 17:24
**Counsel** [2] - 2:13, 2:23
**couple** [2] - 22:14, 24:2
**course** [5] - 22:5, 24:5, 26:20, 27:18, 27:23
**COURT** [27] - 1:1, 3:5, 3:18, 3:24, 6:19, 6:25, 7:12, 7:17, 8:12, 8:18, 8:25, 12:9, 13:20, 16:18, 16:24, 18:6, 22:22, 23:15, 24:5, 24:14, 25:23, 26:5, 26:17, 27:20, 28:2, 29:12, 29:16
**court** [1] - 3:25
**Court** [6] - 1:25, 8:20, 10:6, 18:10, 29:22, 29:23
**Court's** [2] - 16:12, 21:7
**COVID-19** [1] - 24:1
**created** [1] - 5:10
**cross** [1] - 5:9
**cross-use** [1] - 5:9
**crux** [1] - 6:11
**custodians** [1] - 22:19

## D

**date** [2] - 8:13, 21:10
**dates** [1] - 12:7
**Daubert** [1] - 24:25
**DAVID** [1] - 2:18
**David** [1] - 3:22
**deal** [2] - 7:19, 22:8
**dealing** [1] - 22:5

**decision** [5] - 4:13, 18:23, 19:20, 19:23, 20:1
**decisions** [1] - 18:19
**declarations** [1] - 19:19
**Defendants** [2] - 1:7, 1:11
**defenses** [4] - 14:23, 14:24, 17:17, 17:18
**defines** [1] - 14:14
**definitely** [3] - 12:12, 26:11, 26:15
**Deichmann** [1] - 23:22
**DELAWARE** [1] - 1:2
**Delaware** [1] - 1:13
**delved** [1] - 18:22
**demonstrate** [1] - 15:5
**Denver** [1] - 2:12
**deny** [1] - 24:9
**deponents** [5] - 4:20, 4:21, 6:24, 9:6, 23:22
**deposition** [9] - 6:19, 12:8, 13:18, 13:23, 14:4, 15:8, 16:13, 17:9, 24:3
**depositions** [23] - 6:13, 12:23, 13:20, 15:10, 15:11, 15:23, 16:2, 16:15, 16:17, 17:2, 17:4, 17:6, 19:1, 21:18, 23:24, 27:14, 27:17, 27:22, 28:1, 28:24, 29:1, 29:2, 29:4
**describe** [1] - 9:20
**described** [2] - 10:24, 11:21
**description** [1] - 10:1
**design** [1] - 5:3
**desired** [1] - 6:17
**despite** [1] - 21:7
**destroy** [1] - 9:11
**developing** [1] - 10:2
**difference** [1] - 5:10
**different** [2] - 14:20, 20:5
**directly** [1] - 25:4
**discovery** [11] - 5:13, 5:16, 10:22, 12:1, 17:19, 19:9, 19:23, 20:10, 20:23, 21:23, 29:3
**discussed** [2] - 10:10, 16:23
**discussing** [1] - 11:18
**discussion** [1] - 18:7
**discussions** [1] - 18:16
**dispute** [8] - 5:11,

6:11, 7:9, 7:23, 12:2, 13:25, 15:17, 19:14
**disputes** [6] - 4:4, 18:9, 18:11, 18:25, 21:23, 29:6
**distinguish** [1] - 11:11
**DISTRICT** [2] - 1:1, 1:2
**District** [3] - 1:22, 2:19, 29:23
**doable** [1] - 12:15
**Document** [2] - 5:18, 18:1
**document** [7] - 5:24, 7:5, 7:16, 10:5, 17:22, 27:7, 27:15
**documents** [41] - 4:16, 5:7, 5:9, 5:22, 8:3, 9:12, 9:20, 10:7, 10:16, 10:25, 11:2, 11:4, 11:7, 11:11, 11:12, 11:17, 11:22, 12:4, 12:5, 12:12, 13:14, 14:4, 15:13, 15:19, 15:20, 19:1, 19:16, 19:20, 21:4, 21:6, 21:11, 21:12, 21:15, 25:3, 25:8, 26:2, 26:21, 27:4, 27:13, 27:18
**done** [2] - 13:10, 13:18, 18:14, 21:9, 28:1, 28:7
**double** [1] - 23:12
**down** [2] - 15:9, 15:11
**during** [1] - 14:17

## E

**e-mail** [15] - 4:14, 4:16, 4:20, 5:4, 5:17, 5:19, 5:23, 5:24, 6:4, 6:9, 22:18, 22:25, 23:3, 23:5, 23:8
**e-mails** [7] - 21:4, 21:12, 22:15, 22:16, 22:20, 23:2, 23:13
**easily** [2] - 13:12, 13:15
**East** [1] - 28:6
**Eastern** [3] - 25:9, 26:6
**either** [1] - 7:15
**electronically** [1] - 26:24
**email** [1] - 24:21
**end** [2] - 13:6, 27:7
**ends** [1] - 29:18
**engaged** [2] - 12:1, 22:7
**ensure** [1] - 6:12
**entirely** [1] - 19:25

**EPAs** [1] - 9:18
**equitable** [2] - 14:24, 17:18
**especially** [1] - 5:6
**ESQ** [12] - 1:19, 1:21, 1:22, 2:3, 2:6, 2:9, 2:12, 2:15, 2:18, 2:18, 2:19, 2:22
**estoppel** [1] - 14:24
**et** [1] - 4:2
**European** [3] - 9:18, 9:23, 14:10
**event** [2] - 18:4, 23:11
**evidence** [4] - 13:5, 15:4, 15:6, 16:5
**Evidence** [1] - 16:3
**exactly** [1] - 5:15
**examination** [1] - 14:7
**example** [2] - 9:6, 13:13
**excised** [1] - 13:2
**excludable** [1] - 14:22
**excuse** [1] - 18:6
**exhibit** [1] - 14:8
**Exhibit** [4] - 4:15, 5:17, 9:13, 17:25
**expanded** [1] - 26:9
**expect** [2] - 12:12, 12:17
**expecting** [1] - 8:16
**expediency** [2] - 23:24, 27:25
**expedited** [1] - 13:14
**expedition** [1] - 6:17
**expeditiously** [1] - 21:17
**explain** [1] - 19:4
**extent** [4] - 6:25, 20:1, 21:1, 23:2
**extra** [1] - 28:8

## F

**faced** [1] - 13:9
**fact** [2] - 5:6, 17:8
**fair** [2] - 18:14, 26:1
**fairly** [1] - 27:3
**faith** [2] - 7:23, 22:3
**far** [3] - 17:21, 19:21, 26:9
**February** [2] - 5:19, 11:10
**federal** [1] - 13:5
**Federal** [2] - 16:2, 16:3
**fee** [2] - 12:8, 16:8
**fees** [12] - 7:18, 7:19, 7:22, 12:22, 13:9, 13:11, 13:17, 19:3, 19:10, 21:19, 21:25,

22:9
**few** [3] - 3:8, 15:21, 19:11
**figure** [2] - 6:24, 25:11
**file** [4] - 12:20, 27:2, 28:12, 28:15
**filed** [2] - 25:2, 25:3
**financially** [1] - 22:1
**fine** [1] - 23:19
**finish** [1] - 28:8
**first** [11] - 5:20, 5:24, 8:21, 9:9, 9:11, 18:25, 22:12, 24:18, 25:14, 25:15, 26:15
**fishing** [1] - 6:16
**five** [5] - 4:21, 15:9, 15:12, 28:15, 28:19
**five-page** [1] - 28:15
**flag** [1] - 23:20
**flagged** [1] - 7:6
**focused** [5] - 18:1, 19:25, 20:8, 23:8, 28:16
**Foerster** [1] - 3:12
**FOERSTER** [1] - 2:5
**followed** [1] - 17:13
**following** [1] - 3:3
**FOR** [1] - 1:2
**forcing** [1] - 16:12
**foregoing** [1] - 29:20
**foreign** [1] - 9:18
**forth** [1] - 14:6
**forward** [2] - 18:20, 20:9
**founder** [1] - 23:22
**framed** [2] - 12:3, 16:10
**Francisco** [2] - 2:3, 2:6
**fraud** [1] - 7:24
**freedom** [3] - 15:7, 17:10, 17:15
**Friday** [4] - 24:25, 25:21, 28:18, 29:17
**front** [3] - 12:20, 15:16, 19:14
**full** [1] - 10:9
**full-length** [1] - 10:9

### G

**Gaffigan** [2] - 1:25, 29:22
**gathered** [1] - 27:9
**general** [1] - 17:7
**generally** [1] - 13:22
**given** [5] - 5:4, 18:11, 19:5, 23:24, 27:25
**global** [1] - 9:23
**good-bye** [1] - 29:17

**Goutam** [3] - 3:22, 4:10, 22:13
**GOUTAM** [1] - 2:18
**GRANT** [1] - 2:3
**Grant** [1] - 3:11
**great** [2] - 7:19, 22:7
**guess** [1] - 17:1
**guidance** [1] - 6:12

### H

**H.S** [1] - 2:15
**Hall** [2] - 10:21, 18:14
**HAMILTON** [3] - 2:15, 2:17, 2:21
**Hamilton** [1] - 3:21
**hand** [1] - 6:14
**handle** [1] - 9:6
**handled** [1] - 21:22
**happy** [1] - 16:22
**HASTINGS** [1] - 1:21, 2:2
**Hastings** [1] - 3:10
**hear** [2] - 9:1, 22:22
**heard** [2] - 4:7, 20:14
**hearing** [8] - 10:21, 13:15, 15:2, 18:18, 24:25, 25:20, 25:22
**held** [1] - 3:4
**help** [1] - 28:21
**helpful** [1] - 28:20
**hereby** [1] - 29:20
**highly** [2] - 11:14, 14:21
**history** [1] - 16:14
**hit** [1] - 22:19
**holding** [1] - 28:10
**Honor** [42] - 3:7, 3:20, 4:10, 5:14, 6:12, 6:22, 7:5, 7:14, 7:21, 8:23, 9:2, 9:5, 12:14, 12:19, 12:20, 13:15, 13:19, 14:2, 14:16, 15:1, 15:12, 15:17, 15:24, 16:20, 17:1, 17:11, 17:21, 18:5, 22:14, 22:24, 23:11, 23:17, 24:13, 24:16, 24:24, 25:17, 26:7, 26:20, 27:12, 27:23, 29:11, 29:14
**Honor's** [1] - 27:16
**HONORABLE** [1] - 1:16
**hook** [1] - 11:1
**hope** [1] - 24:5
**hopefully** [1] - 29:6
**hours** [1] - 28:8
**Hseih** [1] - 3:17
**HUGHES** [1] - 2:12

**Hughes** [1] - 3:15
**hundreds** [1] - 10:25
**Hung** [1] - 3:13
**HUNG** [1] - 2:6
**hustle** [1] - 8:15

### I

**idea** [3] - 8:9, 17:9, 18:3
**identified** [1] - 4:24
**Illinois** [1] - 2:9
**imagine** [2] - 25:2, 28:11
**impact** [1] - 12:21
**impacted** [1] - 10:20
**impacts** [2] - 13:9, 13:16
**implicated** [1] - 25:5
**implication** [1] - 19:15
**implications** [2] - 19:21
**importantly** [2] - 20:7, 20:8
**IN** [2] - 1:1, 1:2
**Inc** [3] - 2:13, 2:23, 4:2
**INC** [4] - 1:3, 1:6, 1:8, 1:10
**included** [2] - 4:15, 27:16
**including** [2] - 4:7, 14:10
**inconsistent** [2] - 5:15, 17:25
**incurred** [1] - 21:22
**indicating** [1] - 16:1
**indirect** [1] - 5:3
**individuals** [4] - 4:23, 15:15, 15:18
**inducement** [2] - 14:22, 15:5
**inform** [1] - 8:19
**information** [5] - 24:22, 25:13, 25:18, 28:23, 29:1
**informed** [1] - 19:23
**initial** [2] - 4:12, 4:15
**inside** [1] - 17:23
**instead** [1] - 11:23
**introduce** [1] - 3:8
**involved** [3] - 14:18, 14:21, 15:22
**involving** [1] - 14:10
**issue** [35] - 4:12, 4:25, 5:1, 5:7, 5:14, 5:22, 6:1, 6:4, 6:8, 7:8, 8:1, 8:8, 9:3, 9:7, 9:20, 10:12, 11:7, 11:17, 11:20, 16:8, 17:14, 17:16, 17:20,

17:24, 18:2, 19:7, 19:13, 21:19, 21:20, 23:1, 23:20, 25:15, 26:12, 26:13
**issues** [14] - 4:9, 8:4, 9:3, 10:22, 12:4, 12:13, 12:18, 12:24, 12:25, 19:6, 20:25, 23:3, 24:14
**ITC** [2] - 8:8, 22:6
**item** [3] - 9:15, 13:21

### J

**JACOBS** [7] - 1:21, 14:2, 16:20, 22:24, 24:16, 26:19, 29:10
**Jacobs** [7] - 3:10, 9:6, 14:2, 22:25, 24:16, 26:17, 29:9
**James** [1] - 3:21
**JAMES** [1] - 2:15
**Jeff** [1] - 3:16
**John** [3] - 3:8, 3:15, 9:2
**JOHN** [2] - 1:19, 2:12
**joined** [2] - 3:11, 3:21
**joint** [3] - 4:15, 5:18, 5:20
**Judge** [13] - 1:16, 3:6, 4:5, 4:13, 5:13, 10:10, 10:20, 10:21, 15:13, 15:16, 18:13, 19:14
**judgment** [3] - 12:13, 15:1, 24:25

### K

**KELLER** [1] - 1:18
**Kimberly** [1] - 3:22
**KIMBERLY** [1] - 2:19
**knowledge** [1] - 15:9
**knows** [1] - 24:24

### L

**laches** [1] - 14:24
**language** [1] - 22:15
**large** [1] - 20:12
**last** [1] - 21:23
**learned** [1] - 28:17
**least** [7] - 6:2, 19:15, 20:7, 20:13, 20:22, 22:5, 22:6
**leave** [1] - 28:13
**led** [1] - 5:11
**legal** [3] - 9:17, 9:22
**length** [1] - 10:9

**LEONARD** [1] - 1:16
**letter** [2] - 4:14, 7:6, 20:14, 21:2, 22:16
**letters** [4] - 4:6, 6:21, 18:16, 19:17
**letting** [1] - 4:8
**level** [1] - 18:24
**Levine** [3] - 3:14, 3:21
**LEVINE** [3] - 2:9, 2:15, 3:20
**lies** [1] - 17:23
**light** [4] - 5:6, 17:11, 20:19, 27:23
**likely** [2] - 15:18, 28:22
**limit** [1] - 13:25
**limitation** [1] - 6:10
**limited** [3] - 6:14, 14:10, 24:8
**line** [2] - 3:25, 16:13
**lines** [1] - 27:12
**listed** [2] - 4:16, 23:21
**litigation** [4] - 8:5, 20:17, 22:6, 22:8
**litigations** [2] - 6:18, 12:6
**LLP** [9] - 1:18, 1:21, 2:2, 2:5, 2:8, 2:11, 2:15, 2:17, 2:21
**log** [6] - 9:13, 10:14, 10:15, 10:18, 21:6, 21:14
**logged** [2] - 9:13, 21:15
**logging** [3] - 10:23, 11:2, 11:3
**look** [3] - 5:17, 16:13, 27:13
**looked** [2] - 5:5, 7:5
**looking** [6] - 6:15, 6:23, 14:15, 15:6, 15:23, 27:3

### M

**mail** [15] - 4:14, 4:16, 4:20, 5:4, 5:17, 5:19, 5:23, 5:24, 6:4, 6:9, 22:18, 22:25, 23:3, 23:5, 23:8
**mails** [7] - 21:4, 21:12, 22:15, 22:16, 22:20, 23:2, 23:13
**maintain** [1] - 17:3
**maintained** [1] - 17:22
**major** [1] - 11:15
**Margeson** [1] - 3:11
**MARGESON** [1] - 2:3
**Mark** [1] - 3:14
**MARK** [1] - 2:9

**market** [1] - 10:3
**Massachusetts** [1] -
2:22
**material** [1] - 28:5
**materials** [2] - 11:19,
13:6
**mean** [5] - 17:21,
17:23, 19:21, 26:1,
28:25
**means** [2] - 18:22,
19:8
**meant** [1] - 24:9
**meet** [6] - 5:21, 14:17,
16:21, 21:16, 27:24,
29:5
**meets** [1] - 19:18
**memorialization** [2] -
5:21
**memorialized** [1] -
19:18
**mention** [1] - 11:6
**mentioned** [3] - 10:8,
10:12
**meritorious** [1] -
20:19
**mess** [1] - 21:23
**might** [1] - 25:1
**mind** [3] - 14:25, 15:5,
20:12
**model** [1] - 5:2
**modeling** [1] - 5:3
**Monday** [8] - 12:15,
25:7, 26:6, 26:15,
26:22, 28:6, 28:9,
28:17
**monitoring** [1] - 5:2
**Morrison** [1] - 3:12
**MORRISON** [1] - 2:5
**most** [2] - 4:7, 20:14
**motion** [8] - 9:4, 9:8,
9:14, 10:21, 11:8,
11:9, 11:20, 12:18
**motions** [6] - 12:21,
17:20, 18:18, 25:2,
25:14, 28:16
**move** [1] - 18:20
**moved** [1] - 10:14
**moving** [1] - 18:17
**MR** [25] - 3:7, 3:20,
4:10, 6:22, 7:4, 7:14,
7:21, 8:15, 8:19, 9:2,
12:11, 14:2, 16:20,
17:1, 22:13, 22:24,
23:17, 24:13, 24:16,
25:25, 26:7, 26:19,
27:22, 29:10, 29:14
**must** [1] - 20:2

## N

**names** [1] - 27:15
**narrow** [1] - 14:15
**narrowed** [2] - 5:1, 6:2
**narrower** [2] - 11:23,
13:24
**narrowing** [1] - 11:6
**nature** [1] - 16:22
**necessary** [3] - 22:4,
27:25, 29:1
**necessitated** [2] -
16:16, 29:3
**need** [14] - 8:2, 8:13,
8:14, 8:20, 8:23,
12:12, 13:16, 13:21,
15:18, 18:19, 22:11,
23:25, 25:10, 25:17
**needs** [2] - 17:9,
17:17, 17:18, 17:19,
19:24, 20:11
**never** [5] - 7:10, 10:5,
10:12, 16:7, 19:19
**new** [10] - 25:12,
25:18, 27:15, 27:16,
28:16, 28:23, 28:24,
29:2, 29:3, 29:4
**next** [5] - 15:2, 17:20,
18:18, 24:25, 29:17
**Nikolaj** [1] - 23:22
**NO** [2] - 1:4, 1:8
**non** [1] - 24:21
**non-email** [1] - 24:21
**nonprivileged** [3] -
14:6, 21:4, 21:12
**nonsensical** [1] -
11:24
**noon** [1] - 27:2
**Nos** [1] - 4:3
**NOTE** [1] - 3:3
**notes** [1] - 29:20
**nothing** [1] - 24:9
**notice** [1] - 6:19
**noticed** [3] - 15:8,
27:17, 29:5
**notices** [4] - 4:22,
13:23, 14:4, 15:8
**number** [2] - 14:22,
15:10
**numerous** [1] - 18:16

## O

**o'clock** [2] - 25:9, 26:6
**oath** [1] - 12:24
**object** [1] - 18:3
**objected** [1] - 10:18
**objection** [7] - 7:2,
7:13, 11:1, 17:22,
20:16, 20:19, 20:21

**objections** [4] - 4:13,
7:7, 10:5, 18:15
**obligations** [1] - 18:20
**obviously** [2] - 18:13,
24:8
**occasions** [1] - 15:10
**October** [2] - 10:14,
14:3
**OF** [1] - 1:2
**Official** [2] - 1:25,
29:22
**once** [1] - 15:20
**Ondrick** [1] - 3:11
**ONDRICK** [1] - 1:22
**one** [13] - 5:20, 7:13,
8:1, 15:2, 18:25,
19:1, 19:2, 22:8,
23:20, 23:21, 24:17,
25:2, 25:3
**ones** [3] - 4:7, 9:13,
18:11
**oOo** [1] - 3:1
**opening** [1] - 10:8
**operate** [2] - 15:7,
17:15
**operates** [1] - 17:10
**opinion** [1] - 7:19
**opportunity** [1] -
27:24, 28:12
**opposed** [1] - 16:7
**opposing** [1] - 25:12
**oppositions** [1] - 15:3
**order** [24] - 4:5, 4:12,
4:19, 4:21, 5:8, 5:14,
7:9, 7:21, 9:4, 9:8,
9:16, 11:8, 11:20,
11:24, 15:14, 15:17,
16:9, 19:14, 21:16,
24:9, 27:11, 27:16,
27:23, 28:5
**Order** [1] - 21:7
**ordered** [1] - 29:4
**ordering** [3] - 20:23,
21:3, 21:8
**orders** [3] - 5:5, 5:6,
8:6
**original** [1] - 11:7
**originally** [1] - 11:21
**outline** [1] - 4:9
**outlined** [1] - 9:9
**outset** [1] - 12:2
**overbreadth** [5] - 7:2,
7:13, 9:4, 10:11,
20:21
**overbroad** [2] - 11:5,
20:23
**overcoming** [1] - 4:13
**overkill** [1] - 17:11
**overpromise** [1] -
26:14
**overreaching** [1] - 5:5

**overrule** [1] - 20:18
**overruling** [1] - 20:18

## P

**p.m** [7] - 3:4, 26:16,
26:22, 28:6, 28:8,
28:10, 29:18
**Pacer** [2] - 4:22, 6:23
**page** [3] - 21:3, 21:8,
28:15
**pages** [1] - 28:19
**paper** [1] - 11:18
**papers** [3] - 10:24,
25:12, 25:13
**paradigm** [1] - 23:19
**paragraph** [1] - 9:9
**part** [5] - 15:14, 15:16,
15:17, 23:3, 23:10
**particular** [2] - 11:10,
16:4
**parties** [14] - 5:9, 5:12,
6:3, 18:10, 20:3,
21:9, 21:16, 22:6,
22:7, 22:17, 22:21,
24:10, 28:21, 29:5
**parties'** [1] - 6:9
**party's** [1] - 16:12
**passed** [1] - 16:4
**past** [2] - 18:8, 20:1
**patens** [1] - 5:12
**patent** [14] - 4:17,
5:25, 6:7, 9:18, 9:23,
14:10, 14:16, 14:21,
15:6, 20:12, 21:5,
21:12, 23:9
**patents** [14] - 4:17,
4:18, 6:9, 9:21, 9:23,
9:24, 10:2, 14:8,
14:12, 14:13, 15:3,
17:11, 17:16, 26:12
**patient** [1] - 5:2
**PATNAIK** [16] - 2:18,
4:10, 6:22, 7:4, 7:14,
7:21, 8:15, 8:19,
17:1, 22:13, 23:17,
24:13, 25:25, 26:7,
27:22, 29:14
**Patnaik** [3] - 3:22,
4:11, 22:13
**PAUL** [2] - 1:21, 2:2
**Paul** [1] - 3:10
**pause** [1] - 12:7
**pay** [1] - 22:1
**paying** [1] - 13:17
**pending** [1] - 6:17
**people** [2] - 3:8, 15:21
**Pepper** [2] - 3:21, 4:11
**PEPPER** [3] - 2:15,
2:17, 2:21

**perceiving** [1] - 26:9
**period** [1] - 26:25
**permitted** [1] - 13:5
**persuaded** [1] - 21:24
**Petrik** [1] - 3:23
**PETRIK** [1] - 2:22
**phone** [1] - 23:21
**picture** [3] - 9:7, 18:24
**pieces** [1] - 17:17
**place** [3] - 10:13, 11:9,
25:14
**Plaintiff** [2] - 1:4, 1:9
**planning** [1] - 8:22
**point** [6] - 6:20, 8:23,
10:22, 12:10, 26:23,
27:17
**pointed** [1] - 6:20
**pointing** [1] - 25:21
**points** [1] - 16:23
**portfolios** [1] - 9:23
**portray** [1] - 20:6
**position** [2] - 4:9, 7:1
**positions** [1] - 20:3
**possession** [1] - 9:12
**possible** [2] - 27:13,
28:25
**possibly** [1] - 28:17
**potentially** [1] - 11:14
**practice** [5] - 8:8,
17:7, 17:8, 17:13,
17:20
**practitioners** [1] -
9:19
**preclude** [1] - 28:25
**prefer** [1] - 25:8
**prepared** [3] - 9:17,
25:13, 28:21
**preparing** [1] - 25:1
**present** [1] - 25:15
**preserve** [2] - 8:10,
22:4
**preserved** [3] - 7:12,
20:17, 20:21
**preserving** [1] - 8:10
**pretrial** [1] - 13:1
**preview** [1] - 6:17
**previously** [3] - 4:23,
5:12, 21:13
**principally** [1] - 19:25
**privilege** [8] - 7:9,
9:16, 10:14, 10:15,
10:17, 10:18, 13:3,
21:14
**privileged** [5] - 7:25,
11:14, 11:15, 13:7,
21:6
**procedure** [1] - 13:6
**Procedure** [1] - 16:3
**proceed** [2] - 12:10,
28:2
**proceeding** [1] - 29:20

**process** [6] - 23:10, 25:1, 25:10, 26:21, 26:23, 27:4
**produce** [6] - 8:13, 11:19, 21:3, 21:10, 28:4, 28:9
**produced** [6] - 5:23, 21:13, 21:15, 23:4, 29:2, 29:4
**producing** [1] - 19:2
**product** [3] - 10:3, 14:18, 14:20
**production** [10] - 5:24, 5:25, 6:13, 10:7, 14:4, 25:4, 26:5, 27:7, 27:18, 28:17
**products** [19] - 4:18, 4:25, 5:1, 5:3, 6:1, 6:4, 6:8, 9:21, 9:25, 12:5, 14:12, 14:13, 14:16, 17:7, 17:10, 17:13, 17:16, 18:2, 26:12
**proffered** [1] - 17:12
**promptly** [1] - 24:3
**properly** [1] - 20:17
**proportional** [1] - 20:11
**protection** [2] - 16:7, 16:8
**protective** [11] - 5:7, 7:9, 9:4, 9:8, 9:15, 11:7, 11:20, 15:14, 15:17, 16:9, 19:14
**protocol** [2] - 6:9, 23:18
**protocols** [1] - 22:18
**provide** [2] - 16:5, 16:22
**provided** [5] - 13:4, 14:8, 14:9, 15:13, 19:24
**provides** [1] - 12:15
**providing** [1] - 25:19
**provisionally** [4] - 15:11, 16:1, 16:5, 16:15
**pursuant** [1] - 6:2
**put** [9] - 9:13, 10:4, 12:20, 14:5, 15:16, 21:20, 23:1, 23:7, 26:3
**putting** [1] - 13:13

## Q

**quantifiable** [2] - 13:12, 13:15
**quantify** [1] - 10:23
**questioning** [1] - 8:3
**questions** [9] - 8:6,
9:5, 12:8, 12:10, 16:21, 22:10, 22:14, 24:14, 29:12
**quickly** [1] - 8:22
**quite** [1] - 27:13
**quote** [2] - 5:23, 11:25
**quoting** [1] - 9:16

## R

**raised** [4] - 10:6, 14:23, 22:15
**ran** [2] - 22:24, 22:25
**rather** [1] - 25:21
**rationale** [1] - 11:23
**reach** [1] - 4:16
**reached** [1] - 19:11
**reaching** [1] - 20:1
**ready** [2] - 13:14, 18:23
**realistic** [2] - 8:14, 26:4
**realities** [1] - 24:10
**reality** [2] - 19:16, 20:4
**realize** [1] - 22:6
**realized** [1] - 6:22
**really** [4] - 16:8, 16:11, 20:8, 27:25
**reason** [2] - 10:25, 17:12
**reasonable** [4] - 20:11, 24:7, 26:19, 27:24
**reasons** [3] - 13:16, 19:4, 20:13
**receive** [2] - 25:8, 26:22
**received** [3] - 4:14, 25:18, 26:21
**receiving** [3] - 4:12, 25:4
**recent** [3] - 4:4, 4:7, 20:13
**recognize** [2] - 18:19, 28:24
**recognizing** [1] - 9:16
**Recommendation** [1] - 4:5
**record** [6] - 4:1, 4:22, 15:25, 19:5, 19:19, 21:21
**referenced** [1] - 18:17
**referred** [1] - 17:25
**referring** [3] - 11:16, 17:5, 17:24
**reflected** [1] - 19:17
**refused** [1] - 13:8
**regard** [4] - 14:18, 14:20, 20:10, 25:14
**regarding** [6] - 4:17,
5:11, 5:22, 15:3, 15:6, 21:12
**related** [1] - 4:1
**relating** [8] - 4:16, 6:7, 9:23, 15:14, 16:21, 21:4, 23:1, 23:2
**relevance** [13] - 7:6, 7:13, 7:14, 7:15, 9:4, 10:4, 10:6, 10:11, 12:22, 17:21, 18:3, 20:16, 20:19
**relevant** [16] - 4:24, 6:1, 6:24, 11:5, 11:22, 12:13, 12:17, 12:25, 14:21, 15:7, 15:15, 15:22, 20:13, 21:18, 23:13, 26:10
**relief** [2] - 20:25, 21:2
**remain** [1] - 21:6
**remember** [1] - 11:12
**remotely** [1] - 3:4
**reply** [2] - 11:10, 11:13
**Report** [1] - 4:5
**Reporter** [2] - 1:25, 29:22
**reporter** [1] - 3:25
**REPORTER'S** [1] - 3:3
**repositories** [1] - 24:21
**request** [8] - 7:5, 7:16, 10:11, 14:5, 17:22, 20:10, 24:7, 25:7
**requested** [3] - 15:20, 21:5, 21:18
**requesting** [3] - 11:5, 11:17, 23:4
**requests** [5] - 4:16, 7:7, 10:5, 14:3, 23:8
**require** [2] - 11:25, 23:12
**required** [2] - 24:20, 27:14
**requirement** [1] - 23:11
**resolve** [1] - 29:6
**resolves** [1] - 29:7
**respect** [2] - 28:3, 28:15
**respectfully** [1] - 25:7
**respond** [1] - 28:18
**response** [7] - 7:3, 10:24, 24:18, 25:24, 26:3, 27:20, 28:22
**responses** [2] - 7:16, 17:22
**responsive** [6] - 10:1, 21:11, 21:15, 23:14, 24:21, 28:4
**rest** [1] - 26:16
**result** [3] - 21:22, 25:6, 27:18
**results** [1] - 13:12
**return** [1] - 9:11
**review** [4] - 13:14, 19:17, 26:24, 27:5
**reviewed** [1] - 4:6
**RICHARD** [1] - 2:6
**Richard** [1] - 3:13
**rights** [3] - 8:10, 8:11, 22:4
**rise** [1] - 18:11
**round** [2] - 16:13, 16:17
**Rule** [1] - 16:4
**rules** [2] - 12:23, 13:5
**Rules** [2] - 16:2, 16:3
**ruling** [2] - 10:20, 22:10
**run** [2] - 23:4, 23:6

## S

**S.J** [2] - 2:6
**safe** [1] - 29:17
**safeguards** [1] - 13:4
**San** [2] - 2:3, 2:6
**sanction** [1] - 13:17
**sanctioned** [1] - 8:9
**satisfaction** [1] - 20:22
**scanner** [1] - 10:3
**scanners** [1] - 4:24
**schedule** [2] - 18:21, 21:17
**scope** [14] - 5:10, 5:13, 5:22, 6:2, 6:13, 6:14, 7:11, 14:5, 14:14, 17:3, 17:4, 17:5, 23:5, 27:16
**search** [3] - 22:19, 23:8, 24:19
**searched** [1] - 24:21
**searches** [3] - 22:25, 23:3, 23:5
**second** [5] - 9:15, 10:13, 16:12, 16:17, 19:1
**see** [3] - 17:9, 18:25, 25:20
**seeking** [5] - 6:12, 6:16, 8:10, 16:9, 19:9
**seeks** [1] - 5:16
**seep** [1] - 8:5
**sense** [3] - 8:7, 18:2, 26:3
**sensitive** [1] - 11:15
**served** [4] - 4:22, 13:23, 14:3, 14:4
**set** [4] - 4:3, 12:23, 13:8, 29:15
**Shaw** [3] - 3:8, 3:22, 9:2
**SHAW** [6] - 1:18, 1:19, 2:18, 3:7, 9:2, 12:11
**shift** [2] - 19:9, 22:9
**shifting** [1] - 21:25
**short** [2] - 4:21, 12:20
**shorter** [1] - 13:10
**show** [3] - 17:12, 21:21, 27:15
**showing** [1] - 20:22
**shut** [2] - 15:9, 15:11
**sick** [3] - 24:1, 24:2, 24:7
**siding** [2] - 19:6, 19:7
**significant** [1] - 27:3
**significantly** [1] - 10:20
**similar** [3] - 10:1, 14:5, 14:19
**similarly** [1] - 28:18
**smile** [1] - 5:3
**sometimes** [1] - 12:25
**somewhat** [1] - 20:5
**soon** [1] - 24:6
**sought** [3] - 5:23, 16:6, 19:23
**sounds** [1] - 27:5
**specific** [1] - 9:5
**specifically** [2] - 12:5, 23:8
**specify** [1] - 22:18
**spent** [1] - 18:10
**staggered** [1] - 27:5
**Standard** [1] - 25:9
**Stark** [1] - 3:6
**STARK** [1] - 1:16
**start** [1] - 4:8
**started** [2] - 5:8, 15:24
**state** [2] - 14:25, 15:4
**STATES** [1] - 1:1
**stay** [3] - 11:10, 11:23, 11:24
**stenographic** [1] - 29:20
**still** [3] - 8:13, 8:16, 23:18
**stop** [1] - 10:7
**story** [1] - 20:5
**studies** [4] - 4:17, 4:18, 15:7, 15:22
**study** [1] - 4:17
**studying** [1] - 10:2
**stuff** [1] - 28:10
**submission** [4] - 4:15, 5:18, 5:20, 6:5
**submitted** [2] - 10:9, 10:10
**subsequent** [2] - 4:19, 8:6
**subset** [1] - 11:23

**sufficient** [1] - 15:4
**summary** [3] - 12:13,
  15:1, 24:24
**supplement** [5] - 8:22,
  8:24, 25:11, 25:17,
  28:15
**supplemental** [1] -
  6:13
**supplementation** [2] -
  25:25, 27:2
**supplementations** [1]
  - 25:19

## T

**Technologies** [1] - 4:2
**Technology** [1] - 2:13
**TECHNOLOGY** [2] -
  1:3, 1:8
**telephone** [2] - 3:3,
  29:18
**Telephone** [1] - 1:14
**ten** [1] - 13:21
**term** [1] - 23:8
**terms** [5] - 20:23,
  22:19, 23:1, 23:7,
  28:24
**testimony** [1] - 17:9
**tethered** [2] - 9:21,
  17:4
**THE** [28] - 1:1, 1:2,
  3:5, 3:18, 3:24, 6:19,
  6:25, 7:12, 7:17,
  8:12, 8:18, 8:25,
  12:9, 13:20, 16:18,
  16:24, 18:6, 22:22,
  23:15, 24:5, 24:14,
  25:23, 26:5, 26:17,
  27:20, 28:2, 29:12,
  29:16
**therefore** [1] - 19:22
**third** [2] - 11:9, 19:2
**thorough** [1] - 27:10
**thoughts** [1] - 19:11
**three** [2] - 15:3, 18:25
**throughout** [1] - 20:17
**Thursday** [4] - 1:13,
  26:3, 27:1, 28:14
**tied** [1] - 25:16
**tight** [1] - 12:15
**timely** [1] - 21:17
**timing** [1] - 19:2
**today** [11] - 6:23, 7:4,
  13:13, 18:11, 18:12,
  18:23, 20:4, 20:15,
  20:18, 21:20, 28:5
**together** [1] - 13:13
**tomorrow** [1] - 12:14
**took** [3] - 14:18,
  14:20, 20:3

**touched** [1] - 7:7
**toughest** [1] - 21:20
**towards** [1] - 16:11
**tranche** [2] - 8:21,
  26:15
**transcript** [1] - 29:20
**travel** [1] - 24:9
**trial** [2] - 13:2, 13:18
**trials** [1] - 18:18
**tried** [2] - 13:3, 20:5
**TRIOS** [1] - 4:24
**true** [1] - 29:20
**try** [1] - 20:24
**trying** [3] - 6:24, 10:7,
  16:14
**Tuesday** [4] - 27:7,
  28:8, 28:10, 28:17
**turn** [2] - 11:14, 11:18
**turned** [1] - 13:7
**turning** [2] - 11:13,
  12:7
**turns** [1] - 28:6
**two** [15] - 3:9, 4:1, 4:7,
  6:4, 9:9, 10:9, 10:15,
  12:6, 12:18, 14:11,
  20:12, 21:6, 24:17,
  25:2, 28:16
**type** [3] - 16:5, 16:6,
  16:7
**types** [1] - 11:6

## U

**U.S** [2] - 10:3, 29:23
**ultimately** [2] - 11:4,
  19:20
**uncovered** [3] - 23:2,
  23:10, 23:13
**under** [3] - 12:24,
  22:18, 23:18
**undoubtedly** [1] -
  23:1
**unfortunate** [1] -
  21:24
**uniquely** [1] - 5:25
**UNITED** [1] - 1:1
**universe** [1] - 6:24
**unlike** [1] - 6:15
**unnecessarily** [1] -
  16:16
**unnecessary** [2] -
  11:4, 21:21
**unring** [1] - 8:4
**untethered** [2] - 6:8,
  7:11
**up** [10] - 8:8, 12:23,
  15:12, 17:2, 18:18,
  25:21, 27:15, 28:8,
  28:15, 28:19
**update** [1] - 5:24

## V

**via** [1] - 17:9
**view** [2] - 21:1, 26:9
**volume** [1] - 27:4
**vs** [1] - 4:2

## W

**waived** [2] - 7:2, 7:8
**waiver** [1] - 7:24
**wants** [1] - 17:12
**warranted** [1] - 8:11
**warrants** [1] - 21:25
**Washington** [2] -
  1:22, 2:19
**wasted** [1] - 16:11
**ways** [1] - 13:24
**Wednesday** [1] - 26:2
**weeds** [1] - 18:23
**week** [4] - 12:14, 15:2,
  17:20, 18:18
**weeks** [1] - 24:2
**whole** [3] - 13:25,
  16:14, 21:24
**willfulness** [1] - 14:22
**willing** [1] - 16:1
**Wilmington** [1] - 1:13
**window** [1] - 12:15
**withheld** [2] - 21:11,
  27:19
**witness** [1] - 12:24
**witnesses** [2] - 8:3,
  17:6
**wording** [1] - 7:15
**words** [1] - 10:10
**world** [1] - 26:9
**writing** [1] - 15:24

## Y

**year** [1] - 21:23
**yesterday** [5] - 4:7,
  7:6, 7:22, 14:9, 21:2
**yesterday's** [1] - 6:5