IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALIGN TECHNOLOGY, INC., | ) | |
| | ) | Redacted- Public Version |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1646-LPS |
| | ) | |
| 3SHAPE A/S, 3SHAPE TRIOS A/S, and 3SHAPE INC., | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ALIGN TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1647-LPS |
| | ) | |
| 3SHAPE A/S, 3SHAPE TRIOS A/S, and 3SHAPE, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**LETTER TO THE HONORABLE JENNIFER L. HALL FROM JEFF CASTELLANO**

OF COUNSEL:
Blair M. Jacobs
Christina A. Ondrick
Elizabeth Bernard
John S. Holley
Mark Consilvio
James V. Razick
Courtney Hodge
Allan M. Soobert
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, DC 20005
(202) 551-1700

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Jeff Castellano (No. 4837)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
jcastellano@shawkeller.com
*Attorneys for Plaintiff*

Thomas A. Counts
Grant Margeson
PAUL HASTINGS LLP
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
(415) 856-7000

Raymond Stockstill
PAUL HASTINGS LLP
695 Town Center Drive, 17th Floor
Costa Mesa, CA 92626
(714) 668-6200

Michael A. Jacobs
Richard S.J. Hung
Arturo J. Gonzalez
Shaelyn K. Dawson
MORRISON & FOERSTER LLPC
425 Mark Street
San Francisco, CA 94105
(415) 268-7000

Dated: October 9, 2019



Jeff Castellano
I.M. Pei Building
1105 North Market St., 12th Floor
Wilmington, DE 19801
(302) 298-0703
jcastellano@shawkeller.com

October 9, 2019

**BY CM/ECF & HAND DELIVERY**
The Honorable Jennifer L. Hall
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Redacted- Public Version



Re: *Align Technology, Inc. v. 3Shape A/S*, C.A. Nos. 17-1646-LPS, 17-1647-LPS (D. Del.)

Dear Judge Hall:

Plaintiff Align respectfully requests the Court's guidance on the following disputes:

## I. 3Shape's Failings Regarding Document Production

**First**, 3Shape refuses to produce relevant and responsive documents that it produced in 337-TA-1144, a related ITC dispute between the parties, thereby depriving Align of the opportunity to rely on certain highly relevant documents that relate to the accused products in these district court cases (*i.e.*, 3Shape's Patient Monitoring, Trios scanners, Dental System including Model Builder, Smile Design, Real View Engine and Indirect Bonding workflows in OrthoSystem). For instance, 3Shape witness Jacob Birkelund recently confirmed that the materials 3Shape is withholding include ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Ex. A. As another example, Align's final infringement contentions in the 1646 case cite a Patient Monitoring document from the 1144 ITC case. Unable to dispute the relevance of these documents, 3Shape seeks to suppress them on a technicality, arguing that they are not subject to the parties' cross-use agreement. *Id*. This is a distinction without meaning, of course because the documents are either relevant or not (they are), and a separate obligation to produce exists in *these* cases. Ironically, 3Shape's position on this issue is in stark contrast to other points in these cases when 3Shape complained about its inability to keep up with its document production obligations and actually agreed to cross use of the documents produced in the 1090/91 ITC cases (*see, e.g.*, C.A. No. 17-1647, D.I. 61 at §17) and the 1144 ITC case (see C.A. No. 18-886, D.I. 34 at §17) so that the parties would not need to re-produce those documents. Align thus seeks an order compelling 3Shape to produce or make available such documents.

**Second**, 3Shape has failed to produce relevant technical documents for the accused products, thereby depriving Align of the opportunity to rely on them as it is entitled to do during fact discovery and for proof purposes. It is unclear why these materials have not already been produced, given that 3Shape has acknowledged their existence and relevance. For example, a 3Shape witness testified to his belief that 3Shape has an updated version of the produced software specifications for the accused Smile Design product. 3Shape has promised to "look into this" as well, yet has failed to offer a specific deadline for production even as fact discovery draws to a close. *See* Ex. B. For recent 3Shape witness depositions, Align had to download accused product user guides from 3Shape's website. 3Shape should produce these business records. And Align should not face the uncertainty of possible evidentiary challenges to

The Honorable Jennifer L. Hall
Page 2

3Shape's core technical documentation. Align seeks an order compelling the production of how-to guides, current software and requirement specification, user manuals, and other relevant technical documents for the accused products in the 1647 case or an order requiring a 3Shape representative to provide a declaration confirming all such documents for each such accused product have been provided.

**Third**, 3Shape has failed to produce adequate financial information, thereby depriving Align of the opportunity to access and review 3Shape's financial information prior to its scheduled deposition of 3Shape's chief financial officer and corporate designee on financial topics, including, *inter alia*, ███████████████████████████████████████████
███████████████████████████████. *See* Ex. C, ¶100; Ex. D, ¶89; Ex. E, ¶103; Ex. F, ¶23. Unable to corroborate its initial position that the requested documents are all publicly available, 3Shape promised a production, which it then delayed due to "technical issues." When the belated production finally arrived on the eve of the deposition of 3Shape's CFO, it lacked worldwide sales information. Align seeks an order compelling production of 3Shape's worldwide sales information for the accused products in the 1646 and 1647 cases and a further deposition of 3Shape's corporate representative on such information, as this information is undoubtedly relevant to hypothetical negotiation issues raised by the *Georgia Pacific* factors and other issues pertinent to the importance of the U.S. market with regard to 3Shape's infringing products.

**Fourth**, 3Shape has failed to timely produce email evidence, thereby depriving Align of the opportunity to access and review relevant 3Shape emails prior to depositions of 3Shape witnesses. Align timely completed its email productions in August for both cases and since has repeatedly requested reciprocation from 3Shape to no avail. In October 2019, 3Shape produced emails one week in advance of the email custodians' depositions. But 3Shape has failed to produce emails from two critical custodians Mr. Sven Nonboe (June 20 search terms final) and Rune Fisker (May 13 search terms final). *See* Ex. G. Mr. Fisker will be deposed in early November and 3Shape apparently is strategically withholding production of those emails until shortly before his deposition to prevent Align from adequately reviewing the email prior to the deposition. As to Mr. Nonboe, he left the employment of 3Shape before he could be deposed, but worked and emailed with multiple prior deposition witnesses and his email production is undoubtedly relevant to those deponents given his substantial responsibilities regarding accused products including, *inter alia*, Dental System (which includes Real View) and the integration of Smile Design in Dental System. 3Shape's refusal to timely provide the email production will require re-deposition of certain witnesses with regard to any new relevant and responsive information. Align thus respectfully requests that the Court compel immediate production of emails from these custodians and permit Align to take short, narrowly tailored depositions of relevant 3Shape personnel based on the results of the productions, if necessary.

**Fifth**, 3Shape has failed to provide privilege logs for documents and email custodians, thereby depriving Align of the opportunity to assess the legitimacy of 3Shape's bases for refusing production. Align has requested them in writing at least three times, starting several weeks ago. *See* Ex. H. But 3Shape, without explanation and back-tracking on an earlier commitment to do so, has failed to provide privilege logs. Align requests that the Court compel the production of privilege logs for 3Shape's Delaware document production and the email production for each of 3Shape's six email custodians.

## II.  Deposition-Related Issues

**First**, Align seeks a protective order to shield several high-level Align executives from

needless deposition in the 1647 case. Specifically, 3Shape has noticed Simon Beard (Senior Vice President & Managing Director, Americas), Jen Olson (Senior Vice President, Customer Success), and Yuval Shaked (Senior Vice President & Managing Director, iTero). These are so-called apex depositions: each of these individuals is a member of Align's Executive Management Committee. Simon Beard and Jen Olson have no apparent relevance to this case. While Yuval Shaked is the Managing Director of Align's iTero product, 3Shape has already deposed several employees on the iTero in other cases and iTero does not practice the patents asserted in 1647.

Align has notified 3Shape that none of these witnesses possess unique relevant knowledge and any information they possess can be obtained by lower-ranking Align employees. *See* Ex. I-J. 3Shape has failed to make the requisite showings under the apex doctrine. *See id*. *See, e.g.*, *Czyzewski v. Sun Capital Partners, Inc. (In re Jevic Holding Corp.)*, 526 B.R. 547, 556 (D. Del. 2014) (affirming bankruptcy court's quashing of subpoenas to high-level executives; "When determining whether the deposition of a high-ranking corporate officer is appropriate, courts in this circuit consider: '(1) whether the executive or top-level employee has personal or unique knowledge on relevant subject matters; and (2) whether the information sought can 'be obtained from lower[-]level employees or through less burdensome means, such as interrogatories.'"), *aff'd* 656 F. App'x 617 (3d Cir. 2016); *see also, e.g.*, *Affinity Labs of Tex. v. Apple, Inc.*, No. 09-4436, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011) *Cf. Wilson v. City of Wilmington*, No. 13-1390-LPS, 2015 WL 4594510, at *2 (D. Del. July 29, 2015) (granting motion for protective order to prevent depositions of high-level government officials where "the record is devoid of any evidence that would suggest that [the officials] possess personal, unique, or superior knowledge regarding the facts of Plaintiff's alleged employment discrimination."). As such, none of these depositions are warranted.

In an effort to evaluate 3Shape's deposition notices, Align sought the following information from 3Shape: (i) what personal knowledge 3Shape contends that Beard, Olson, and Shaked uniquely possess, (ii) what relevance 3Shape contends that knowledge has to this case, (iii) what basis 3Shape has for contending that such knowledge cannot be obtained through other, less burdensome means. *See* Ex. I. 3Shape deflected on all counts, instead opting to question this Court's decision to stand with other courts in the Third Circuit (and for that matter, across the nation) in applying the apex doctrine where it is clearly warranted. *See* Ex. J. Then, hours before filing this letter brief, 3Shape provided for the first time a purported basis for these depositions. *Id*. Align will address 3Shape's newly minted and cursory positions in its answering letter brief. Meanwhile, Align remains mystified as to why 3Shape believes the noticed depositions are justified, leading to the inescapable conclusion that they are intended only to harass Align and its senior executive team. Align respectfully requests the Court enter a Protective Order shielding Align's high-ranking executives from 3Shape's improper tactics.

**Second**, 3Shape improperly seeks to depose Mr. Avi Kopelman well after the close of fact discovery in the 1646 case. This request to take a deposition well after the close of discovery is impermissible because Align previously offered dates for Mr. Kopelman's deposition during fact discovery on more than one occasion, but 3Shape's counsel was unable to logistically handle the deposition. Moreover, the parties previously agreed to extend discovery by two months to accommodate deposition scheduling, so there is no plausible excuse for 3Shape's failure to secure this deposition during the scheduled period of fact discovery. *See* Exs. K-L (six email requests beginning on 8/12 to schedule Mr. Kopelman's deposition on 9/6, 9/13, week of 9/9, week of 9/30 with 3Shape's attorneys being repeatedly unavailable because of other case

depositions or needing more than one week with the email production despite parties' agreement that depositions would proceed so long as emails produced one week in advance of the deposition); D.I. 220. 3Shape's tardiness has prejudiced Align in that it has needlessly injected uncertainty and the need for copious contingency planning into what is already a large and complex dispute between the parties. Align repeatedly provided windows of availability for Mr. Kopelman consistent with (i) the witnesses' limited availability and (ii) this Court's rules and scheduling order, of which the parties have long been aware. While some requests to depose witnesses outside proposed windows may be reasonable and have been accommodated by Align, Align should not continue to be prejudiced by 3Shape's chronic unpreparedness and inability to take and defend depositions during the same week. Align thus seeks a protective order preventing 3Shape from deposing Mr. Kopelman out of time in the 1646 case.

**Third**, 3Shape improperly seeks to depose witnesses noticed for deposition in the 1647 case on issues uniquely relevant to only the 1646 case and use the 1647 depositions to fill holes in discovery not taken in a timely manner in the 1646 case, where fact discovery is complete. By way of background, during the parties' meet-and-confer call on September 26, 2019, 3Shape's counsel posited that cross-use principles permit 3Shape to inquire in depositions for the 1647 case about issues that it conceded to be uniquely relevant to only the 1646 case. But that would unfairly prejudice and burden Align for various reasons, including that (i) it allows out-of-time fact discovery in 1646 without obtaining leave of Court and (ii) certain expert reports would have already been served in the 1646 case. For example, Align's manager of digital lab specialists, Mike Walsh (*noticed only in 1647*), has knowledge related to the milled-model process (including the process involved in the iTero models), and other general knowledge of Align's lab business, which is not relevant to any of the patents or issues in 1647 but does have relevance to the 1646 case. As another example, Align's named inventor Avi Kopelman has knowledge relevant to the design and development of each patent in the 1646 case, yet clearly there is no crossover between patents in the 1646 and 1647 cases. 3Shape wrongly attempts to use the cross-use agreement to forgive its failure to timely obtain 1646 discovery. 3Shape's effort to bootstrap fact depositions in the 1647 case into 1646 is an abuse of process. Align seeks a protective order preventing the deposition of Mike Walsh in 1647 and preventing 3Shape from questioning Mr. Kopelman in his 1647 deposition on issues uniquely relevant to 1646.

**Fourth**, despite promising to do so, 3Shape has refused to designate corporate deponents in response to certain topics in Align's Second Rule 30(b)(6) in 1646 and now erroneously contends the notice is improper and/or duplicative. *Quality Aero Tech., Inc. v. Telemetrie Elktronik GmbH*, 212 F.R.D. 313, 319 (E.D.N.C. 2002) ("[T]here is no aspect of the Rules which . . . restricts a party to a single 30(b)(6) deposition . . . ."); *see also* Ex. M-N. Align seeks an order compelling designations.

### III. 3Shape's disclosure of multiple invalidity grounds for the first time in its final invalidity contentions (C.A. No. 17-1646 only)

Align requests that the Court strike ten (10) new prior art references from 3Shape's final invalidity contentions under Fed. R. Civ. P. 37(c). 3Shape has known of at least some of the newly asserted prior art references for *more than a year*, but waited until the last possible day permitted under the scheduling order, just days before the close of fact discovery and weeks before opening expert reports, to provide its new contentions. 3Shape has thus failed to supplement as required by Fed. R. Civ. P. 26(e). 3Shape's lack of diligence in disclosing critical information about its invalidity case has prejudiced Align, and justifies an order striking

The Honorable Jennifer L. Hall
Page 5

3Shape's new contentions. 3Shape even previously supplemented its contentions on April 1, 2019. *See* Ex. O.

**3Shape's dramatic expansion of its invalidity case.** On September 19, 2019, 3Shape served its final invalidity contentions. Ex. P. Those contentions more than **doubled** the number of overall references 3Shape was asserting against the four patents-in-suit (from 7 to 17), and nearly **tripled** the number of primary references (from 3 to 8).[1] *Id.* 3Shape has **added approximately 236 new pages of contentions** and increased the invalidity **contentions for the '757 patent from 13 pages to 144 pages of contentions**. Further, most of the new references were not disclosed to Align until three days before the final contentions (when 3Shape made its final disclosure of invalidity references) and **none** of them had ever been asserted as invalidating references against the four currently asserted patents.

However, 3Shape had known of at least two of the newly asserted primary references since it served initial contentions on October 1, 2018. *Durbin* was disclosed (though not charted) as relevant to "state of the art" and motivation to combine, among other things. Ex. Q. And *Paley* was charted with respect to a patent Align is no longer asserting. *Id.* 3Shape never provided supplemental contentions indicating that it would be asserting these or any of the other new references against the asserted patents. Moreover, 3Shape has never explained when it first became aware of the 10 newly asserted references, and has never offered any justification for its failure to disclose the new contentions until the last possible day under the scheduling order.

**3Shape violated its duty to supplement.** 3Shape's failure to supplement violates Rule 26(e) because (1) there was a prior response (3Shape's initial contentions); (2) that response was incomplete (as evidenced by the vast supplementation in the final contentions); (3) 3Shape knew the initial contentions were incomplete (for example, 3Shape had knowledge of at least two of the references for nearly a year); and (4) 3Shape never otherwise informed Align of its new contentions.[2] *See Lab. Skin Care, Inc. v. Limited Brands, Inc.*, 661 F. Supp. 2d 473, 476-77 (D. Del. 2009) (granting motion to preclude for failure to supplement). Thus, the new contentions should be precluded under Rule 37(c)(1) "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). It is neither.

**The *Pennypack* factors favor exclusion.** The *Pennypack* factors also support exclusion. *Lab. Skin Care*, 661 F. Supp. 2d at 477. *First*, the information withheld—more than half of 3Shape's invalidity case and most of its primary references—is indisputably important. *Second*, Align will be prejudiced if 3Shape is permitted to continue to assert these references. With fact discovery ended, Align has no ability to depose 3Shape fact witnesses on the subject matter of the newly asserted references or seek other fact discovery. Depositions of 3Shape witness were held almost exclusively in Denmark and further depositions would be costly, burdensome, and

---

[1] Align uses 3Shape's shorthand to refer to the offending new references: "*Durbin*," "*Ingwersen*," "*Kleiner*," "*Gillis*," and "*Heartwell*," (asserted against the '330, '364, and '916 Patents) and "*Rubbert*," "*Imgrund*," "*Boerjes*," "*Paley*" and "*Chishti*" (asserted against the '757 Patent).

[2] 3Shape's inclusion of *Durbin* and *Paley* in its initial contentions was not adequate. "Parties must not only disclose prior art references, but also their intent to rely on them." *Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d 460, 470 (D. Del. 2006). 3Shape's initial contentions did not reasonably put Align on notice that it intended to rely on these references as primary invalidating references against the currently asserted patents.

The Honorable Jennifer L. Hall
Page 6

difficult to arrange given the parties' other obligations before trial. Align's ability to vet its responses to 3Shape's new contentions with its experts is severely curtailed; rebuttal expert reports are due November 6, 2019. Align also was deprived of the opportunity to adjust its claim construction positions in view of the new references. Align was surprised by the new contentions—3Shape's prior contentions, discovery responses, and communications gave no indication that it intended to rely on the new references to establish invalidity of the asserted patents. *Third*, 3Shape's failure to disclose cannot be adequately remedied by additional discovery, supplemental expert reports, or a schedule extension in the short time before trial. In that time, the parties will be engaging in expert discovery, dispositive motion briefing, and trial preparation, while at the same time litigating several other patent and antitrust actions in this Court and elsewhere. *Fourth*, Align's prejudice cannot be cured without substantial disruption of the trial date. Adding substantial fact and expert discovery to this case jeopardizes the trial date, an outcome not acceptable to Align. *Fifth*, 3Shape has offered no explanation or justification for its failure to provide these contentions earlier, even though it has known of at least two of the primary references for more than a year. 3Shape cannot argue a change in Align's position justified its late disclosure—Align's responses to 3Shape's initial invalidity contentions were served on April 1, 2019, more than six months ago. *Sixth*, while Align is not necessarily suggesting 3Shape acted in bad faith, it is difficult to imagine that 3Shape did not realize the importance of the 10 new references to its case until just before the final contention deadline, given its pre-existing knowledge of at least some of those references.

**Legal precedent supports exclusion.** In *Praxair*, the defendant disclosed a number of new prior art references on the last day of the extended discovery period but just "two weeks before [defendant's] expert report on validity and six weeks before [plaintiff's] responsive report," where defendant gave "no reason why these references were not disclosed earlier." 445 F. Supp. 2d at 470. The Court upheld its exclusion of the new references, finding that plaintiff "was deprived of fact discovery and adequate time for its expert report analysis," and that "[t]he only way to have cured this untimely disclosure was to extend discovery and reschedule trial, a resolution patently unfair to plaintiff." *Id.* Similarly, in *Galderma Labs., LP v. Sun Pharm. Indus. Ltd.*, C.A. No. 16-1003-LPS (D. Del.), plaintiff sought to exclude a new defense defendant had failed to disclose in violation of Rule 26(e) until shortly before opening expert reports. Ex. R. The Court granted plaintiff's motion, finding that the disclosure was untimely "even though there is six months left until trial" because defendant had reason to know of the defense earlier and waited to disclose until after foreign fact depositions, depriving plaintiff of the "opportunity to use those depositions to prepare to overcome" the new defenses. Ex. S. The Court determined that exclusion was warranted. The logic of *Praxair* and *Galderma Labs* applies with equal force here—Align has been deprived of fact discovery and adequate time for incorporation of analysis of the additional fact discovery into its expert reports. The Court should reject 3Shape's ambush tactics and exclude the new prior art references provided in 3Shape's final invalidity contentions.

Respectfully submitted,

*/s/ Jeff Castellano*

Jeff Castellano (No. 4837)

cc:   Clerk of the Court (by hand delivery)
      All counsel of record (by e-mail)