# Buchanan Ingersoll & Rooney PC

**Geoffrey G. Grivner**
302 552 4207
geoffrey.grivner@bipc.com

919 North Market Street, Suite 990
Wilmington, DE 19801-3036
T 302 552 4200
F 302 552 4295

October 14, 2019

**BY CM/ECF & HAND DELIVERY**
The Honorable Jennifer L. Hall
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

      Re:    *Align Technology, Inc. v. 3Shape A/S et al.*, C.A. No. 17-cv-1646, 17-cv-1647

Dear Judge Hall:

Pursuant to this Court's Order in the above-captioned proceedings, 3Shape hereby submits its answering brief to Align's discovery dispute letter. D.I. 250 (1646); D.I. 231 (1647).

      **I.**    **Document Production**

**Documents Produced in 337-TA-1144**. As previously advised, 3Shape did not agree to enter into cross-use agreements between these actions and the 1144 Investigation due to the parties' agreements with respect to e-mail production in various other actions. However, 3Shape has never refused to allow questioning on non-e-mail custodian documents produced in the 1144 Investigation during depositions of 3Shape witnesses. Align is already in possession of documents produced in the 1144 Investigation and 3Shape continues to allow Align to use such documents (excluding 1144-exclusive e-mail production documents). As such, it would appear that Align's request that 3Shape "make such documents available" is moot.[1]

**Technical Document Production**. Pursuant to the Scheduling Orders in these actions, 3Shape timely produced core technical documents in these actions in 2017 and has since updated that production on numerous occasions. As Align knows from speaking with dozens of 3Shape personnel, When made aware of any new version being made available, 3Shape has produced updated versions. Regarding Align's demands relating to 3Shape's product guides and other publicly available documents, 3Shape has produced these documents and offered to reproduce any documents specifically requested by Align in color, despite the expense associated with doing so. 3Shape has also allowed Align to use non-Bates stamped documents (*e.g.*, in depositions of 3Shape witnesses) that Align counsel represents are publicly available. 3Shape believes it has complied with its discovery obligations and objects that an order requiring it to produce <u>all technical documents</u> for each accused product would

---

[1] 3Shape raised this issue in its opening letter because <u>Align</u> objected to use of responsive documents produced only in 1144 documents (not email correspondence) in the deposition of Lisa Barry and then subsequently claimed this "waived" cross-use, which is a conveniently manufactured argument that lacks any support.

violate the proportionality requirements of Rule 26.

**Financial Production.** 3Shape produced updated financial documents, including United States sales information, global pricing documents, and global product catalogs the week before the deposition of 3Shape's CFO, Nikolaj Kromann Jørgensen. 3Shape repeatedly objected to Align's financial discovery requests to the extent they called for worldwide sales information and Align did not raise the objection upon receiving 3Shape's updated financial document production, nor did it take the deposition of 3Shape's CFO under protest. *See, e.g.*, Ex. A-D. Moreover, Align's vague assertion that it needs worldwide sales information for undefined "hypothetical negotiation issues" and "other issues pertinent to the importance of the U.S. Mark" is wholly insufficient to establish relevance of sales data outside the U.S., much less establish a right to take a second deposition which was not conditioned on receiving such data. *See, e.g.*, *Tessera, Inc. v. Broadcom Corp.,* No. 16-380-LPS-CJB, 2017 U.S. Dist. LEXIS 178929 (D. Del. Oct 24, 2017) (denying motion to compel worldwide sales data for accused products in patent infringement suit where plaintiff failed to establish relevance of data sought to indirect infringement allegations).

**E-mail Production.** Since June of this year, 3Shape has made productions for six of eight Align-identified e-mail custodians in the 1646/1647 actions. 3Shape is processing e-mail production for the remaining two custodians in these actions and expects to produce by early next week. 3Shape notes that it did not receive finalized search terms for two of the eight Align custodians until early September. In contrast, 3Shape provided Align with its finalized terms for all eight Align e-mail custodians by early July 2019.

**Privilege Logs.** 3Shape has a pending privilege motion before the Court that is expected to significantly impact privilege accorded to the parties' documents and communications in the district court proceedings. *See* D.I. 145 (1646), D.I. 138 (1647). To avoid unnecessary and duplicative work, 3Shape has been waiting to serve its privilege log until after a decision on this matter is received. It will also make any subsequent production, to the extent necessary, at that time. However, if the Court disagrees with this approach, 3Shape will serve separate privilege logs before and after receiving the court's opinion.

## II. Deposition-Related Issues

**A. "Apex" Depositions**: Align has failed to meet its "heavy burden" of demonstrating that the following deposition notices should be quashed under the so-called "apex" doctrine, a doctrine never previously raised during two years of litigation and the taking of 40 depositions in the district court proceedings by Align. *See* Exhibit E.

(i) *Yuval Shaked*: As explained in prior correspondence to Align, Mr. Shaked has unique and personal knowledge that is highly relevant to the facts of this case.

*See* Ex. F.

*See* Exhibit G. These matters relate directly to allegations against Align for engaging in unfair competition against 3Shape and are highly relevant to its equitable and affirmative defenses, as well as possible counterclaims, in both proceedings.

(ii) *Simon Beard and Jen Olson*: Mr. Beard and Ms. Olson are both members of Align's Executive Management Committee (EMC),

October 14, 2019
Page - 3 –

███████████████████████████████████

███    Through discovery, 3Shape has received thousands of pages of presentations prepared for and/or given to the EMC that are highly relevant to the claims and defenses at issue, including Align's product development and marketing strategy, its relationship with 3Shape (including termination of interoperability), competitive analysis, and the products at issue. Lower-level employees have also testified that they cannot speak to the EMC's thought process or decision making since they are not directly involved. *See, e.g.,* Exhibit H.

3Shape intended to introduce documents and seek testimony regarding the EMC through Raphael Pascaud, but his deposition is no longer secured. Therefore, 3Shape seeks to depose another member of the EMC to introduce relevant testimony and will withdraw the other notice(s). *See* Exhibit E.

**B. Avi Kopelman:** 3Shape's right to depose Mr. Kopelman in both 1646 and 1647, a witness who was timely noticed for depositions in both proceedings **and designated for more than 40 30(b)(6) topics by Align in 1646**, is addressed more extensively in its opening letter. However, Align's arguments make clear this is an attempt to keep 3Shape from obtaining highly relevant evidence and avoid a determination of this case on its merits. Align's actions are objectively unreasonable. A refusal to allow 3Shape to obtain testimony relevant to 1646 would be highly prejudicial with no countervailing prejudice to Align – the parties have agreed to extend expert discovery and Align must make Mr. Kopelman available for deposition in November in 1647.

**C. Mike Walsh**: Similarly, Align misleadingly seeks to keep 3Shape from obtaining the personal deposition of Mr. Walsh by arguing that 3Shape is seeking to depose him on issues uniquely relevant to only the 1646 case. Based upon 3Shape's review of document production, Mr. Walsh was personally involved in the parties' interoperability agreement and joint venture efforts, which are directly related to 3Shape's equitable/affirmative defenses and possible counterclaims in both proceedings. ███████████████████████████████████████████████████████████████████████████ *See* Exhibit I.

However, to avoid the signaled future disputes over relevance of testimony with respect to the separate proceedings, 3Shape asks this Court to allow 3Shape to take a one-day deposition of Mr. Walsh under a dual 1646/1647 caption. This will not extend the date or time of the deposition allotted under the current 1647 notice, nor will it otherwise prejudice Align, as this is consistent with the parties' actions to date (including last week's deposition of Kerri Kling).

**Align's Second 30(b)(6) Notice**: Highlighting its one-sided litigation tactics, Align also seeks an order compelling designations to its second 30(b)(6) notice served in 1646 after asking this Court to grant a protective order preventing 3Shape from taking the properly-noticed deposition of Mr. Kopelman in 1646. D.I. 250 (1646) at p. 4. This is 1 of 3 separate 30(b)(6) notices in 1646, each purporting to contain different topics.

3Shape has confirmed to Align that it believes both the second and third 30(b)(6) notices were improperly served because Align failed to seek leave of court to conduct successive depositions of a corporation pursuant to Rule 30(a)(2)(A). *See, e.g., Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192–193 (1st Cir. 2001) (trial court properly excluded deposition because proffering party did not seek leave of court before noticing second Rule 30(b)(6) deposition); *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 234 (E.D. Pa. 2008) (nothing exempts Rule 30(b)(6) depositions from leave of court requirement); *see also* Exhibit J. 3Shape further confirms that any such request should be denied under Rule 26(b)(1) and (2) as unnecessarily burdensome despite ample opportunity to

October 14, 2019
Page - 4 –

obtain the discovery sought by other means.[2]  *Id.*

### III.     Align's Motion to Strike Invalidity Grounds

Lastly, Align asks this Court to strike ten prior art references from 3Shape's timely-served final invalidity contentions. However, Align fails to identify a single case or any statutory authority that involved striking <u>final invalidity contentions</u> timely filed pursuant to a scheduling order for failure to supplement its initial invalidity contentions.

First, Align fails to establish that Rule 26(a) and (e) govern the parties' initial and final invalidity contentions, which are governed by the scheduling order.  *See* D.I. 42; 191; 206; 220. Invalidity contentions are not expressly subject to the obligations of Rule 26(a) or (e), nor does the scheduling order state that Rule 26 will apply.[3]  Moreover, the case law relied upon by Align - *Lab. Skin Care v. Limited Brands, Inc.*, 661 F. Supp. 2d 473 (D. Del. 2009) and *Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d 460 (D. Del. 2006) – involves interrogatory responses, not initial and final invalidity contentions. As such, Align has failed to support its assumption that 3Shape had an ongoing duty to supplement its initial invalidity contentions under Rule 26(e).

Second, even assuming *arguendo* that Rule 26(e) does apply, 3Shape submits that it did satisfy its obligation thereunder by serving complete final infringement contentions in accordance with the timing set forth in the scheduling order. 3Shape timely supplemented its initial invalidity contentions with its final invalidity contentions in accordance with the scheduling order and prior to the end of discovery. Therefore, this Court should find that 3Shape satisfied any obligations under Rule 26(e)(1)(A) because this was a "timely" submission and/or because the final contentions constitute "additional or corrective information" that has been made known to Align during the discovery process.[4]

Lastly, even assuming that Rule 26(e) applies and that its obligations were not satisfied by service of final invalidity contentions in accordance with the Court's scheduling order, Align has failed to offer any compelling legal or factual support for its position that the ten prior art references should be stricken from 3Shape's final invalidity contention under Rule 37(c).

As Chief Judge Stark has recognized, "[i]t bears emphasis that exclusion of 'critical evidence'…is an 'extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.'" *Abbott Labs. v. Lupin Ltd.*, 2011 U.S. Dist. LEXIS 53846, at *3, *12-13 (D. Del. May 19, 2011) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994)).

The cases relied upon by Align are inapposite to the present facts. The first case, *Lab. Skin Care*,

---

[2] Align's first 30(b)(6) notice was extremely comprehensive, contained 148 topics, and has served as the operating notice in the 1646 action throughout discovery. Align has also already completed 40 depositions between the district court proceeding.

[3] 3Shape notes that the Delaware Default Standard for Discovery does recognize that because the disclosures for initial discovery in patent litigation are "initial," "each party shall be permitted to supplement." Dist. Of Del., *Default Standard for Discovery* § 4, n.3. However, it does not state that initial infringement and invalidity contentions are subject to the obligation to supplement set forth in Rule 26(e).

[4] The Court could alternatively find that serving final invalidity contentions in accordance with the scheduling order satisfies Rule 26(e)(1)(B) (supplementation "as ordered by the court.").

October 14, 2019
Page - 5 –

involved a request by the Plaintiff to strike a prior art reference in Defendant's Motion for Summary Judgment, which is clearly distinguishable from the present facts. As discussed above, *Lab. Skin Care* involved interrogatory responses and the case turned upon the <u>sufficiency</u> of the disclosure to put the plaintiff on notice, not the timeliness of the disclosure. By contrast, in the present case, there is no challenge to the adequacy of 3Shape's final invalidity contentions. As such, this case is inapposite.

*Praxair* is similarly distinguishable. Like *Lab. Skin Care*, *Praxair* involves interrogatory responses, not initial or final invalidity contentions. 445 F. Supp. 2d at 469. Moreover, the Court only excluded references that were disclosed after the last day of regular fact discovery. *Id.* This was based upon the defendant's representation to the Court at the end of regular fact discovery that it did not have more prior art references to disclose. *Id.* By contrast, in the present case, the challenged references were all disclosed on the final invalidity contention date, within fact discovery, and with explicit detail provided as to how the references invalidate the claims.[5]

Moreover, even assuming they are applicable, the *Pennypack* factors counsel that the request to strike the references from 3Shape's final contentions must be denied. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977).

*First*, the parties agree that the cited references are undeniably important to 3Shape's invalidity case. *See* D.I. 250 at p. 5. *Durbin* is one of only two primary references used for invalidity positions regarding three of the four asserted patents ('364, '330, and '916 patents) remaining in this case. *Imgrund*, *Boerjes*, and *Paley* provide three valuable and persuasive primary references for invalidity challenges against the '757 patent. The remaining challenged references are necessary to provide obviousness positions in combination with these base references. If Align's motion is granted, 3Shape will be effectively precluded from properly presenting its invalidity case. *See Greatbatch Ltd. v. AVX Corp.*, No. 13-723-LPS (D. Del. Sept. 22, 2015) (holding that any prejudice is outweighed by the importance of the references to Defendants invalidity case).[6] Furthermore, 3Shape's intent to rely upon *Durbin* was clearly disclosed in its initial invalidity contentions.[7] The remaining references have all been timely provided based on the jointly agreed upon scheduling order – 3Shape has not "withheld" any information. Thus, this first factor weighs heavily in favor of allowing the references as "the invalidity contentions are critical to [3Shape's] defense in this action." *Abbott Labs*, 2011 U.S. Dist. LEXIS at *13.

---

[5] Align also cites to a letter brief and teleconference hearing with Chief Judge Stark from *Galderma Labs., LP v. Sun Pharm. Indus.Ltd.*, C.A. No. 16-1003-LPS (D. Del.). *See* D.I. 250 at p. 6, Ex. R-S. However, the context or relevance of this decision is not clear based upon the references provided. Moreover, it appears to involve a response to infringement contentions, not invalidity contentions, and therefore it not analogous to the present situation.

[6] The *Greatbatch* case is particularly illustrative as a parallel showing why the motion to strike should be denied. *See Greatbatch* at 1*-2*; *see* Ex. K. Due to space restrictions, this will be addressed further during the parties' teleconference.

[7] 3Shape's initial invalidity contentions regarding each of the '364, '330, and '916 patents stated: "Gateno is used throughout the claim charts, however, the claims are also obvious under 35 U.S.C. §103 based on U.S. Pre-Grant Publication No. 2002/0064759 ("Durbin") in view of Brennejsen, Zgryzadła, and/or Wasiljew." Align's statement that "*Durbin* was disclosed (though not charted) as relevant to "state of art" and motivation to combine" is, at best, misleading. Align was notified of the intent to use *Durbin* as a primary reference for obviousness grounds.

Courts favor the resolution of disputes on their merits and "[t]his is particularly true with respect to the validity of patents." *Id.* at 14 (citing *U.S. v. Glaxo Group Ltd.*, 410 U.S. 52 (1973)).

*Second,* Align has not suffered any prejudice or surprise. As to the references, 3Shape explicitly put Align on notice of *Durbin*. *See* Ex. L. *Paley* was known to 3Shape, but was not considered for the '757 patent until about one week before the final invalidity contention date because Align only served their final infringement contentions on August 28, 2019. *See* Ex. M. It was only at this time that 3Shape had an adequate understanding of how Align intended to assert infringement of the '757 patent (the initial infringement contentions contained several different theories).[8] The remaining invalidity theories were all charted for the first time by 3Shape through collaboration with 3Shape's experts within the few weeks leading up to the final invalidity contention date in accordance with the timeline set forth under the Scheduling Order. There were no "ambush" tactics employed here.

Moreover, the invalidity contentions were provided and updated pursuant to the Court's scheduling order that was specifically designed to prevent prejudice to the plaintiff. Align unilaterally decided to extend its deadline date for providing supplemental validity contentions until this dispute is resolved. *See* Ex. N. Align will thus have had well over a month to consider the final invalidity contentions and provide supplemental contentions. And the parties have agreed to a revised expert timeline that sets Align's responsive expert report date (which respond to 3Shape's opening invalidity expert reports) as December 6, 2019. D.I. 251. This factor favors 3Shape. *See, e.g.*, *HSM Portfolio LLC v. Elpida Memory Inc.*, 2016 U.S. Dist. LEXIS 16786, *6-8 (D. Del. February 11, 2016).

*Third*, there will be no disruption to the trial schedule by denying Align's motion to strike. 3Shape followed the Court's scheduling order (with joint extensions agreed upon by the parties), which was specifically tailored to not disrupt trial date. *See Greatbatch* at 2* ("The Court set a date for disclosure that would not disrupt trial and Defendants met their obligations by that deadline."). Moreover, Align's expert witnesses will have ample time to review 3Shape's invalidity contentions and respond accordingly. D.I. 251.

Lastly, 3Shape has not engaged in any bad faith or willfulness in not disclosing any invalidity grounds. 3Shape has timely provided identification of the prior art references and notice of all of the invalidity grounds pursuant to the agreed upon dates in the scheduling order.

Therefore, for the reasons set forth above, the Court should deny Align's motion to strike because there is no basis for taking the extreme position to preclude 3Shape from properly presenting its invalidity case when it complied with the Court's disclosure obligations.

---

[8] For example, Align's final infringement contentions, for the first time, equate vertices of a mesh to voxels and posit an entirely different theory regarding the "identification of the intraoral area of interest" that was not provided in Align's initial infringement contentions. To the extent that Align alleges 3Shape delayed in providing supplemental invalidity contentions – the same thing can be said for Align. There was no supplementation of any infringement contentions by Align until final infringement contentions were provided on August 28, 2019, pursuant to the scheduling order.

October 14, 2019
Page - 7 –

███████████████████████████

                                                Respectfully submitted,

                                                */s/ Geoffrey G. Grivner*

                                                Geoffrey G. Grivner (#4711)

cc:      Clerk of the Court (by hand delivery)
          All counsel of record (by ECF and e-mail)